322 U.S. 340
 64 S.Ct. 1019
 88 L.Ed. 1313
 INTERNATIONAL HARVESTER CO. et al.
v.
DEPARTMENT OF TREASURY OF STATE OF INDIANA et al.
 No. 355.
 Argued Feb. 29, 1944.
 Decided May 15, 1944.
 
 Appeal from the Supreme Court of the State of Indiana.
 Messrs. Edward R. Lewis, of Chicago, Ill., and Joseph J. Daniels, of Indianapolis, Ind., for appellants.
 Messrs. Winslow Van Horne and John J. McShane, both of Indianapolis, Ind., for appellees.
 Mr. Justice DOUGLAS delivered the opinion of the Court.
 
 
 1
 This case raises questions concerning the constitutionality of the Indiana Gross Income Tax Act of 1933 (L.1933, p. 388, Burns' Ind.Stats.Ann. § 64-2601 et seq.) as construed and applied to certain business transactions of appellant companies. The suit was brought by appellants to recover gross income taxes paid to Indiana during the years 1935 and 1936. The Indiana Supreme Court sustained objections to the imposition of the tax on certain sales but allowed the tax to be imposed on other types of transactions. 221 Ind. 416, 47 N.E.2d 150. The correctness of the latter ruling is challenged by the appeal which brings the case here. Judicial Code § 237(a), 28 U.S.C. § 344(a), 28 U.S.C.A. § 344(a), 28 U.S.C. § 861a, 28 U.S.C.A. § 861a.
 
 
 2
 Appellants are corporations authorized to do business in Indiana but incorporated under the laws of other States. They manufacture farm implements and motor trucks and sell those articles both at wholesale and retail. During the period here in question they maintained manufacturing plants at Richmond and Fort Wayne, Indiana and selling branches at Indianapolis, Terre Haute, Fort Wayne, and Evansville, Indiana. They also had manufacturing plants and sales branches in adjoining States and elsewhere. Each branch had an assigned territory. In some instances parts of Indiana were within the exclusive jurisdiction of branch offices which were located outside the State. The transactions which Indiana says may be taxed without infringement of the federal Constitution are described by the Indiana Supreme Court as follows:
 
 
 3
 'Class C: Sales by branches located outside Indiana to dealers and users residing in Indiana. The orders were solicited in Indiana and the customers took delivery to themselves at the factories in Indiana to save time and expense of shipping.[1]
 
 
 4
 'Class D: Sales by branches located in Indiana to dealers and users residing outside of Indiana, in which the customers came to Indiana and accepted delivery to themselves in this state.[2]
 
 
 5
 'Class E: Sales by branches located in Indiana to dealers and users residing in Indiana, in which the goods were shipped from points outside Indiana to customers in Indiana, pursuant to contracts so providing.[3]
 
 
 6
 The gross income tax[4] collected on those transactions is the same one which was before this Court in Department of Treasury v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188, and J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429. The tax was described in the Storen case as 'a privilege tax upon the receipt of gross income.' 304 U.S. at page 311, 58 S.Ct. at page 915, 82 L.Ed. 1365, 117 A.L.R. 429. In that case an Indiana corporation which manufactured products and maintained its home office, principal place of business, and factory in Indiana sold those products to customers in other States and foreign countries upon orders taken subject to approval at the home office. It was held that the Commerce Clause (Art. I, Sec. 8 of the Constitution) was a barrier to the imposition of the tax on the gross receipts from such sales. But as we held in the Wood Preserving Corp. case, neither the Commerce Clause nor the Fourteenth Amendment prevent the imposition of the tax on receipts from an intrastate transaction even though the total activities from which the local transaction derives may have incidental interstate attributes.
 
 
 7
 The objections under the Commerce Clause and the Fourteenth Amendment to the tax on the receipts from the three classes of sales involved here are equally without merit.
 
 
 8
 In the Wood Preserving Corp. case contracts were made outside Indiana for the sale of railroad ties. The respondent-seller, a Delaware corporation with its principal place of business in Pennsylvania, obtained the ties from producers in Indiana and delivered them to the buyer (Baltimore & Ohio Railroad Co.) in Indiana who immediately loaded them on cars and shipped them out of the State. Payments for the ties were made to the seller in Pennsylvania. We held that Indiana did not exceed its constitutional authority when it laid the tax on the receipts from those sales.
 
 
 9
 We see no difference between the sales in the Wood Preserving Corp. case and the Class C sales in the present one which is translatable into a difference in Indiana's power to tax. The fact that the sales in Class C are made by an out-of-state seller and that the contracts were made outside the State is not controlling. Here as in the Wood Preserving Corp. case, delivery of the goods in Indiana is an adequate taxable event. When Indiana lays hold of that transaction and levies a tax on the receipts which accrue from it, Indiana is asserting authority over the fruits of a transaction consummated within its borders. These sales, moreover, are sales of Indiana goods to Indiana purchasers. While the contracts were made outside the State, the goods were neither just completing nor just starting an interstate journey. It could hardly be maintained that Indiana could not impose a sales tax or a use tax on these transactions. But, as we shall see, if that is the case, there is no constitutional objection to the imposition of a gross receipts tax by the State of the buyer.
 
 
 10
 The Class D sales are sales by an Indiana seller of Indiana goods to an out-of-state buyer who comes to Indiana, takes delivery there and transports the goods to another State. The Wood Preserving Corp. case indicates that it is immaterial to the present issue that the goods are to be transported out of Indiana immediately on delivery. Moreover, both the agreement to sell and the delivery took place in Indiana. Those events would be adequate to sustain a sales tax by Indiana. In McGoldrick v. Berwind-White Coal Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, we had before us a question of the constitutionality of a New York City sales tax as applied to purchases from out-of-state sellers. The tax was 'laid upon the buyer, for consumption, of tangible personal property, and measured by the sales price.' Id., 309 U.S. at page 43, 60 S.Ct. at page 391, 84 L.Ed. 565, 128 A.L.R. 876. And it was 'conditioned upon events occurring' within New York, i.e., the 'transfer of title or possession of the purchased property.' Id., 309 U.S. at pages 43, 44, 60 S.Ct. at page 391, 84 L.Ed. 565, 128 A.L.R. 876. Under the principle of that case, a buyer who accepted delivery in New York would not be exempt from the sales tax because he came from without the State and intended to return to his home with the goods. The present tax, to be sure, is on the seller. But in each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. In neither does the tax aim at or discriminate against interstate commerce. The operation of the tax and its effect on interstate commerce seem no more severe in the one case than in the other. Indeed, if we are to remain concerned with the practical operation of these states taxes rather than with their descriptive labels (Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 363, 61 S.Ct. 586, 588, 85 L.Ed. 888, 132 A.L.R. 475), we must acknowledge that the sales tax sustained in the Berwind-White case 'was, in form, imposed upon the gross receipts from an interstate sale.' Lockhart, Gross Receipts Taxes on Interstate Transportation and Communication, 57 Harv.L.Rev. 40, 87. But that case did no more than to hold that those in interstate trade could not complain if interstate commerce carried its share of the burdens of local government which helped sustain it. And there was no showing that more than that was being exacted.
 
 
 11
 The sales in Class E embrace those by an Indiana seller to an Indiana buyer where the goods are shipped from points outside the State to the buyer. The validity of the tax on receipts from such sales woiuld seem to follow a fortiori from our recent affirmance per curiam (318 U.S. 740, 63 S.Ct. 666, 87 L.Ed. 1120) of Department of Treasury v. Allied Mills, Inc., 220 Ind. 340, 42 N.E.2d 34. In that case an Indiana corporation had one factory in Indiana and two in Illinois. Each factory was given a specified part of Indiana to service—a method of distribution adopted to take advantage of favorable freight rates, not to evade taxes. The issue in the case was whether the Indiana gross income tax could be applied to receipts from sales to resident customers in Indiana to whom deliveries were made from the plants in Illinois pursuant to orders taken in Indiana and accepted in Illinois. The Indiana Supreme Court sustained the imposition of the tax. We affirmed that judgment on the authority of Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488, and McGoldrick v. Felt & Tarrant Mfg. Co., 309 U.S. 70, 60 S.Ct. 404, 84 L.Ed. 584.
 
 
 12
 In the latter cases the Felt & Tarrant Co. was an Illinois seller who had agents soliciting orders in California and New York. All orders were forwarded to the Illinois office for approval. If accepted, the orders were filled by shipping the products to the local agent who delivered to the purchaser. At times shipments would be made direct to the buyers. Remittances were made by the customers direct to the Illinois office. In the first of these cases the Court sustained the collection from the seller of the California use tax. In the second we upheld on the authority of McGoldrick v. Berwind-White Coal Co., supra, the imposition by New York City of its sales tax on those purchases.
 
 
 13
 We do not see how these cases can stand if the Class E sales are to be exempt on constitutional grounds from the present tax. Indeed the transactions in Class E have fewer interstate attributes than those in the Felt & Tarrant Mfg. Co. cases since the agreements to sell were made in Indiana, both buyer and seller were in Indiana, and payments were made in Indiana. It is of course true that in the Felt & Tarrant Mfg. Co. cases taxes of different names were involved. But we are dealing in this field with matters of substance not with dialectics. Nelson v. Sears, Roebuck & Co., supra. In this case as in the foregoing sales tax cases the taxable transaction is at the final stage of an interstate movement and the tax is on the gross receipts from an interstate transaction. In form the use tax is different since it is levied on intrastate use after the completion of an interstate sale. But we recognized in the Berwind-White case that in that setting the New York sales tax and the California use tax had 'no different effect upon interstate commerce.' 309 U.S. at page 49, 60 S.Ct. at page 394, 84 L.Ed. 565, 128 A.L.R. 876. And see Nelson v. Sears, Roebuck & Co., supra. The same is true of this Indiana tax as applied to the Class E sales. There is the same practical equivalence whether the tax is on the selling or the buying phase of the transaction. See Powell, New Light On Gross Receipts Taxes, 53 Harv.L.Rev. 909, 929. Each is in substance an imposition of a tax on the transfer of property. In light of our recent decisions it could hardly be held that Indiana lacked constitutional authority to impose a sales tax or a use tax on these transactions. But if that is true, a constitutional difference is not apparent when a 'gross receipts' tax is utilized instead.
 
 
 14
 Here as in case of the other classes of sales there is no discrimination against interstate commerce. The consummation of the transaction was an event within the borders of Indiana which gave it authority to levy the tax on the gross receipts from the sales. And that event was distinct from the interstate movement of the goods and took place after the interstate journey ended.
 
 
 15
 Much is said, however, of double taxation, particularly with reference to the Class D sales. It is argued that appellants will in all probability be subjected to the Illinois Retailers' Occupation Tax for some of those sales, since that tax is said to be exacted from those doing a retail business in Illinois even though orders for the sales are accepted outside of Illinois and the property is transferred in another State.[5] But it will be time to cross that bridge when we come to it. For example, in the Wood Preserving Corp. case the State to which the purchaser took the ties might also have sought to tax the transaction by levying a use tax. But we did not withhold the hand of Indiana's tax collector on that account. Nor is the problem like that of an attempted tax on the gross proceeds of an interstate sale by both the State of the buyer and the State of the seller. Cf. J. D. Adams Mfg. Co. v. Storen, supra. We only hold that where a State seeks to tax gross receipts from interstate transactions consummated within its borders its power to do so cannot be withheld on constitutional grounds where it treats wholly local transactions the same way. Such 'local activities or privileges' (McGoldrick v. Berwind-White Coal Co., supra, 309 U.S. at page 58, 60 S.Ct. at page 398, 84 L.Ed. 565, 128 A.L.R. 876) are as adequate to support this tax as they would be to support a sales tax. To deny Indiana this power would be to make local industry suffer a competitive disadvantage.
 
 
 16
 Affirmed.
 
 
 17
 Mr. Justice JACKSON dissents.
 
 
 18
 Mr. Justice ROBERTS took no part in the consideration or decision of this case.
 
 
 
 [1]
 The stipulation states that the 'orders and contracts were accepted by branches outside Indiana' and payments 'were received by branches outside Indiana.' The Class C sales were principally sales of motor trucks manufactured at Fort Wayne and a small amount of goods manufactured at Richmond. In case of wholesale sales it is the custom for the dealer to notify the company at the time he desires delivery that he wants to take delivery of the goods himself at Fort Wayne or Richmond. In the case of retail sales in Class C, 'if the user desires to undertake transportation of the goods to their destination and for that purpose to take delivery at the factory in Indiana, it is the business practice for the contract or order so to state.'
 
 
 [2]
 The stipulation states that the 'orders or contracts were accepted and the sales proceeds were received by the Branch Managers at the branches located within Indiana.' The business custom or practice respecting deliveries in the State to dealers or retail purchasers was the same as in case of the Class C sales.
 
 
 [3]
 The stipulation states that the goods in this class were shipped by the company from outside the State, the order or contract specifying that 'shipment should be made from a point outside Indiana to the purchaser in Indiana.' In these cases, moreover, the orders were 'solicited from purchasers residing in Indiana by representatives of Indiana branches, or the orders or contracts were received by mail by Indiana branches. The orders and contracts were accepted by the Branch Manager at branches located within Indiana. Payments of the sales proceeds were received by branches in Indiana. The sales in this class were of goods manufactured outside the State of Indiana.'
 There was no showing, moreover, that goods in this class were of kind that could be obtained only outside Indiana. It seems to be admitted that Class E sales arose when an Indiana branch received orders for goods in quantities which could not be economically carried in stock or where a cheaper freight rate could be obtained by direct shipments from outside Indiana. Cf. Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139; Sonneborn Bros. v. Cureton, 262 U.S. 506, 43 S.Ct. 643, 67 L.Ed. 1095.
 
 
 [4]
 Sec. 2 of the Act provided in part: 'There is hereby imposed a tax, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the entire gross income of all residents of the State of Indiana, and upon the gross income derived from sources within the State of Indiana, of all persons and/or companies, including banks, who are not residents of the State of Indiana, but are engaged in business in this state, or who derive gross income from sources within this state, and shall be in addition to all other taxes now or hereafter imposed with respect to particular occupations and/or activities.' The language of this section was recast by L.1937, c. 117, § 2, p. 611.
 Sec. 6(a) of the Act exempted 'so much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America.' And see L.1937, c. 117, § 6, p. 615.
 
 
 [5]
 See L.Ill.1943, p. 1121, § 1b, amending L.Ill.1933, p. 924, Ill.Rev.Stat. c. 120, § 440b.