[No. 34422.   *En Banc.*   August 14, 1958.]

CROWN ZELLERBACH CORPORATION, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.[1]

[1]Reported in 328 P. (2d) 884.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie,* and *Andrew M. Williams,* for appellant.

*The Attorney General* and *Keith Grim, Special Assistant,* for respondent.

OTT, J.—This is an action by Crown Zellerbach Corporation (hereinafter referred to as Crown) to obtain a tax refund. Under Washington's business and occupation tax law, Crown is engaged in two taxable activities, (1) as a wholesaler selling pulp and paper to customers within the state, and (2) as a manufacturer of pulp and paper products. It is stipulated that, during the year in question, goods of the value of $6,728,745 (which were manufactured out of state), and goods of the value of $13,753,578 (which were manufactured or stocked within the state), were wholesaled by Crown to Washington customers, and that, during the same period, Crown manufactured and sold goods of the value of $60,021,192 (cost of transportation and discounts excluded) to customers outside the state. Crown paid the tax on these amounts, as computed by the tax commission, and instituted this proceeding for a refund. The relief prayed for was denied by the trial court, and Crown has appealed.

Appellant concedes that the physical manufacturing activity of Crown is completely effected within the state of Washington. However, appellant contends that the state of Washington is prohibited from measuring its tax upon the total receipts from the sale of Crown's manufactured goods by the commerce clause (Art. I, § 8) and the privileges and immunities clause (amendment 14, § 1), of the Federal constitution. It argues that, since its headquarters office in California directs its manufacturing activities in this state, a portion of the cost of maintaining this activity carried on outside the state must be deducted from the gross sales price, in order to conform with the cited constitutional provisions.

Are the executive functions being carried on outside the state by Crown a part of the activity upon which the manufacturing tax is imposed?

The following statutory provisions are pertinent:

RCW 82.04.070: " 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property and/or for services rendered, without any deduction on account of the cost of property sold, the cost of materials used, labor costs, interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses."

RCW 82.04.220: "There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be."

RCW 82.04.240: "Upon every person except persons taxable under subsection (2) of RCW 82.04.260 engaging within this state in business as a manufacturer; as to such persons the amount of the tax with respect to such business shall be equal to the value of the products, including byproducts, manufactured, multiplied by the rate of one-quarter of one percent.

"The measure of the tax is the value of the products, including byproducts, so manufactured regardless of the place of sale or the fact that deliveries may be made to points outside the state."

■ Since the statute (RCW 82.04.120) does not define "To manufacture" to include executive functions, the word "manufacture" must be given its plain and ordinary meaning. *Pacific Northwest Alloys v. State*, 49 Wn. (2d) 702, 306 P. (2d) 197 (1957); *Miller v. Pasco*, 50 Wn. (2d) 229, 310 P. (2d) 863 (1957).

To "manufacture" is defined in Webster's New International Dictionary (2d ed.) as follows:

"To make (wares or other products) by hand, by machinery, or by other agency; . . .
"To work, as raw or partly wrought materials, into suitable forms for use; . . .
"To fabricate; to invent; also, to produce mechanically."

■ It is the local activity of converting raw materials into a finished product (manufacturing) which is taxed. RCW 82.04.070, *supra*, excludes any deduction from the gross proceeds of sales for the cost of property sold, the cost of materials used, labor costs, and so forth.

We conclude that the tax imposed on "manufacturing" does not merit an apportionment merely because a portion of the executive function of directing the manufacturing activity is carried on from outside this state.

Appellant next contends that, since the activities of its San Francisco office are reflected in the ultimate sales price of the product, the state of Washington is prohibited from measuring its tax upon the total receipts from the sale of its (Crown's) manufactured goods by Art. I, § 8, and amendment 14, § 1, of the United States constitution. Appellant has cited, in support of its contention, cases wherein the incident sought to be taxed was either an integral part of interstate commerce or was not purely a local activity. See *Fisher's Blend Station v. State Tax Commission*, 297 U. S. 650, 80 L. Ed. 956, 56 S. Ct. 608 (1936); *J. D. Adams Mfg. Co. v. Storen*, 304 U. S. 307, 82 L. Ed. 1365, 58 S. Ct. 913, 117 A. L. R. 429 (1938).

■ However, in the case presently before us, the incident upon which the tax is imposed, that is, manufacturing, is purely a local activity and, hence, properly taxable. *American Mfg. Co. v. St. Louis*, 250 U. S. 459, 63 L. Ed. 1084, 39 S. Ct. 522 (1919); *Utah Power & Light Co. v. Pfost*, 286 U. S. 165, 76 L. Ed. 1038, 52 S. Ct. 548 (1932); *Great Atlantic & Pacific Tea Co. v. Grosjean*, 301 U. S. 412, 81 L. Ed. 1193, 57 S. Ct. 772, 112 A. L. R. 293 (1937); *Department of Treasury of Indiana v. Ingram-Richardson Mfg. Co.*, 313 U. S. 252, 85 L. Ed. 1313, 61 S. Ct. 866 (1941).

A review of the Federal cases concerned with the power of a state to tax a purely local activity, measured by the gross receipts from sales of the product within and outside the taxing state, reveals that such taxes have been upheld, where the local taxable incident is one of sufficient substance so that the sales price substantially reflects the value

of the products at the place of manufacture. *Home Ins. Co. v. New York*, 134 U. S. 594, 33 L. Ed. 1025, 10 S. Ct. 593 (1890); *Western Live Stock v. Bureau of Revenue*, 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 944 (1938); *Department of Treasury of Indiana v. Wood Preserving Corp.*, 313 U. S. 62, 85 L. Ed. 1188, 61 S. Ct. 885 (1941); *Aponaug Mfg. Co. v. Stone*, 314 U. S. 577, 86 L. Ed. 467, 62 S. Ct. 131 (1941); *International Harvester Co. v. Department of Treasury of Indiana*, 322 U. S. 340, 88 L. Ed. 1313, 64 S. Ct. 1019 (1944); *Nippert v. Richmond*, 327 U. S. 416, 90 L. Ed. 760, 66 S. Ct. 586, 162 A. L. R. 844 (1946).

In *American Mfg. Co. v. St. Louis, supra*, the court, in considering a similar tax, said:

" . . . No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the State, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the City of St. Louis.

"There is no doubt of the power of the State, or of the city acting under its authority, to impose a license tax in the nature of an excise upon the conduct of a manufacturing business in the city. Unless some particular interference with federal right be shown, the States are free to lay privilege and occupation taxes. [Citing cases.]

"The city might have measured such tax by a percentage upon the value of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory. In order to mitigate the burden, and also, perhaps, to bring merchants and manufacturers upon an equal footing in this regard, it has postponed ascertainment and payment of the tax until the manufacturer can bring the goods into market. . . .

"In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods

manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore, it does not amount to a regulation of interstate commerce. And, for like reasons, it has not the effect of imposing a tax upon the property or the business transactions of plaintiff in error outside of the State of Missouri, and hence does not deprive plaintiff in error of its property without due process of law."

The commerce clause is designed to prevent a burden upon interstate commerce by duplication of tax upon a single activity. *Western Live Stock v. Bureau of Revenue, supra; Coverdale v. Arkansas-Louisiana Pipe Line Co.*, 303 U. S. 604, 82 L. Ed. 1043, 58 S. Ct. 736 (1938); *International Harvester Co. v. Department of Treasury of Indiana, supra.* The possibility of a duplicate tax is not here present, for the reason that the entire taxable incident, that is, manufacturing, is conducted solely within the state of Washington. In such instances, the United States supreme court has upheld the tax, although measured by gross receipts received partly from out-of-state sales. See *Western Live Stock v. Bureau of Revenue, supra; Coverdale v. Arkansas-Louisiana Pipe Line Co., supra; International Harvester Co. v. Department of Treasury of Indiana, supra; International Harvester Co. v. Evatt*, 329 U. S. 416, 91 L. Ed. 390, 67 S. Ct. 444 (1947); *Interstate Oil Pipe Line Co. v. Stone*, 337 U. S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264 (1949).

We conclude that the manufacturing tax imposed herein does not violate either of the Federal constitutional provisions cited.

Appellant next contends that, since its sales promotion activities carried on outside the state are reflected in the gross sales price of commodities sold within this state, an apportionment of the wholesale tax is required by the cited constitutional provisions.

A similar apportionment in regard to the taxation of a wholesale activity totally effected within this state was refused in *United States Steel Corp. v. State*, 51 Wn. (2d) 224, 226, 316 P. (2d) 1099 (1957), in which opinion we said:

"Appellant argues that the tax should be apportioned between interstate and local activities. There is no question of apportionment here. The tax is measured solely by appellant's local wholesale and retail activities. No part of the tax is attributable to its manufacturing or other out-of-state activities. The sales are negotiated within the state of Washington, and the fact that delivery is made direct to the purchaser does not change the nature of the local transaction. *Norton Co. v. Department of Revenue of Illinois*, 340 U. S. 534, 95 L. Ed. 517, 71 S. Ct. 377; *Field Enterprises v. State, supra* [47 Wn. (2d) 852, 289 P. (2d) 1010 (affirmed, 352 U. S. 806, 1 L. Ed. (2d) 39, 77 S. Ct. 55)]."

We adhere to the rule announced in the cited case.

Under the facts of the instant case, the interstate commerce provisions of our Federal constitution are not violated, for the reason that the wholesale activity (the taxable incident) is completely accomplished within the taxing jurisdiction. The fact that the commodity has been or will be in interstate commerce does not preclude a tax on the purely local wholesale activity. *United States Steel Corp. v. State, supra*; *Henneford v. Silas Mason Co.*, 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937).

There remains the single question of whether the imposition of the tax violates Art. I, § 12, of the state constitution.

We adhere to the decision of this court in *Crown Zellerbach Corp. v. State*, 45 Wn. (2d) 749, 278 P. (2d) 305 (1954), in which the question was answered adversely to appellant. Appellant cites this decision in support of its contention that apportionment is proper, under the facts of the instant case.

We do not agree that the cited case so holds because (1) the issue here presented was not before the court in that case, and (2) the apportionment referred to therein concerns activities which are substantially a part of the taxable incident, rather than those activities which enhance only the measure of the tax.

The judgment is affirmed.

HILL, C. J., MALLERY, DONWORTH, FINLEY, WEAVER, ROSELLINI, and HUNTER, JJ., concur.

FOSTER, J., did not participate.