[No. 42451.    En Banc.    November 14, 1972.]

INTERMEDIATE SCHOOL DISTRICT No. 105, *Respondent,* v. YAKIMA COUNTY *et al., Appellants.*

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Jerry D. Talbott, Deputy,* for appellants.

*Harry Hazel,* for respondent.

NEILL, J.—Yakima County appeals from a writ requiring the county to furnish office space for the operation of an intermediate school district without payment of rental. Defendant county challenges the trial court's construction of RCW 28A.21.120 and the constitutionality of that statute as so construed.

Plaintiff is an intermediate school district created in 1967 under RCW 28A.21. The district embraces Yakima County, Kittitas County and a portion (two school districts) of Klickitat County. Pursuant to authority of RCW 28A.21.120, the district board designated the City of Yakima as the headquarters office of the intermediate school district. A satellite or branch office is located in Kittitas County.

The district paid rent for office space in the Yakima County courthouse from 1967 through 1970. In 1971, the county increased the rental from $2 a square foot to $3 a square foot. The district refused to pay further rentals, whereupon the county withheld sums equal to the claimed rent from funds the county was obligated to pay the district under RCW 28A.21.180. The district sought a writ of mandamus to require the county to furnish the headquarters space without rental and to require the county to pay the withheld funds to the district. The trial court granted the relief.

RCW 28A.21.120 provides:

The intermediate school district board shall designate the headquarters office of the intermediate school district. The board of county commissioners in each county *shall provide* the intermediate school district superintendent and employees with suitable quarters and office for the operations of the intermediate school district. Official records of the intermediate school district board and superintendent, including each of the county superintendents abolished by chapter 176, Laws of 1969 ex.sess., shall be

kept by the intermediate school district superintendent. Whenever the boundaries of any of the intermediate school districts are reorganized pursuant to RCW 28A.21.020, the state board of education shall supervise the transferral of such records so that each intermediate school district superintendent shall receive those records relating to school districts within the appropriate intermediate school district.

(Italics ours.)

The first issue is whether the words "shall provide" mean without payment of rent. Plaintiff contends, the trial court concurring, that the legislature intended the county to make space available rent free. The county contends these words evince a legislative intent to require the county to make space available at a reasonable rental.

■ Words in a statute are to be given their usual and ordinary meaning. *State ex rel. Beam v. Civil Serv. Comm'n,* 77 Wn.2d 951, 468 P.2d 998 (1970).

*Webster's Third New International Dictionary* (1963) defines "provide" as follows: "to supply what is needed for sustenance or support." Such a definition implies that the facilities are to be made available rent free. In *Backman v. Salt Lake County,* 13 Utah 2d 412, 415, 375 P.2d 756 (1962), the Utah Supreme Court interpreted the word "provide" in the phrase: "[A]ll counties * * * with a population greater than 250,000 according to the last official census shall call and provide for * * * a special election * * * . . .". The court held that "provide" meant the county should pay the cost of the special election.

The primary consideration, as with any question of statutory construction, is to determine the intent of the legislature. 3 J. Sutherland, *Statutory Construction* § 5813 (3d ed. 1943), at 95; *State ex rel. Blume v. Yelle,* 52 Wn.2d 158, 324 P.2d 247 (1958). As a general proposition, courts will apply the construction which best carries into effect the purpose of the statute under consideration.

■ The legislative history of the statute supports the meaning we attribute to the statute. Prior to the creation of

intermediate school districts, counties were required to provide county superintendents of schools with a suitable office at the county seat.

> The county commissioners shall provide the county superintendent with a suitable office at the county seat. Whenever a joint county board of education as herein provided is organized, it shall be the duty of such board to designate the headquarters office of the county superintendent, and the board of county commissioners in the county of such designation shall provide the county superintendent with a suitable office at the county seat of such county, and official records of the county superintendent of each consolidation of county superintendents' offices shall be transferred to and thereafter kept by the county superintendent of the consolidated offices.

Laws of 1955, ch. 157, § 15. It is undisputed that counties were not charging rent to county school superintendents under that statute. In 1965, the legislature created intermediate school districts. Laws of 1965, ch. 139. That legislation contained no provision concerning furnishing of office quarters. The county charged the district rent for 1967, 1968, 1969 and 1970. In 1969, the legislature enacted a comprehensive rewrite of the intermediate school district act and by Laws of 1969, ch. 176, § 12 (effective July 1, 1970), included a provision that "The board of county commissioners in each county shall provide the intermediate school district superintendent with suitable quarters and office." The 1971 act (RCW 28A.21.120) merely added language not pertinent to the issue at bench.

Because of the ordinary meaning of the words and the legislative history of the statute, we hold that the language "shall provide" as used in this statute means that the county is to make space available to the district without rental charge. Had the legislature intended that the district be subject to rental charges there would have been no need for the inclusion of the words in the 1969 and 1971 enactments.

■■ The county then contends that, given this construction, the statute violates Const. art. 11, § 12 which

prohibits the legislature from levying taxes upon counties or other municipal corporations for municipal purposes. The county also contends that if education is construed to be a state purpose, in order to conform the statute with article 11, section 12, the statute violates Const. art. 7, § 9 which requires that county taxes be expended only for corporate (county) purposes.

These arguments fail to recognize the dual nature of education, the object of the statute in question.

In *Newman v. Schlarb,* 184 Wash. 147, 50 P.2d 36 (1935), this court held that the state legislature could require its subdivisions to levy taxes sufficient to produce 5 cents per day for each pupil in attendance in the common schools of the county. The court held that such a tax did not violate Const. art. 11, § 12, since education has both a state and local purpose. The court said at page 154:

> The establishment and maintenance of public schools throughout the state is primarily and essentially a *state* purpose, from which local and special benefits are expected to, and do, flow to the counties and the various municipalities of the state. In the performance of such general duties and purposes, the state calls upon and utilizes its constituent political agencies and for such purposes confers such powers and imposes such duties upon them as it deems necessary. These local subdivisions are created by the sovereign power of the state and under its paramount authority, with the view, not only of having them administer their own local and internal affairs, but also of having them carry out the policies of the state at large and assist in the accomplishment of the general purposes of the state.

The local purpose of education is further emphasized in *Clark v. Seiber,* 48 Wn.2d 783, 296 P.2d 680 (1956). *Clark* states that there is local control and autonomy as to taxes levied on behalf of school districts and where and how expenditures are to be made. The state cannot control the amount of the school district budget and the millage necessary to meet that budget.

Both *Newman* and *Clark* demonstrate that education has both state and local purposes and functions. Because of the

448

state purpose, RCW 28A.21.120 does not violate Const. art. 11, § 12 when the county expends moneys to support the school district. That constitutional provision does not prohibit the legislature from imposing taxes on a county for such a state purpose. *See* Const. art. 9, §§ 1 and 2.

Likewise, defendants' argument—that RCW 28A.21.120 violates Const. art. 7, § 9 because it is not a corporate purpose of Yakima County to provide educational services to Kittitas and Klickitat County residents—is erroneous. Corporate purpose means general corporate purposes affecting all of the people in the county and for that reason all taxes shall be uniform. *Hansen v. Hammer,* 15 Wash. 315, 46 P. 332 (1896). Since education and more specifically, the furnishing of office space for the superintendent and employees of the intermediate school district, is a corporate purpose, affecting all of the people in Yakima County who are taxed uniformly therefor, Const. art. 7, § 9 is not violated.

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, STAFFORD, WRIGHT, and UTTER, JJ., concur.