[No. 43969.    En Banc.    December 23, 1976.]

JOHN H. SELLEN CONSTRUCTION COMPANY, *Respondent*, v.
THE DEPARTMENT OF REVENUE, *Appellant*.
ACACIA MEMORIAL PARK AND ACACIA MEMORIAL PARK
PERMANENT CARE FUND, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.
KING COUNTY MEDICAL BLUE SHIELD, *Respondent*, v.
THE DEPARTMENT OF REVENUE, *Appellant*.
OLYMPIA BREWING COMPANY, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.
BLUE CROSS WASHINGTON-ALASKA, INC., *Respondent*, v.
THE DEPARTMENT OF REVENUE, *Appellant*.

*Slade Gorton, Attorney General,* and *Richard D. Hicks, Assistant,* for appellant.

*Ferguson & Burdell, William H. Ferguson,* and *John M. Woodley,* for respondent John H. Sellen Construction Company.

*Davis, Wright, Todd, Riese & Jones,* by *Richard A. Derham,* for respondent Acacia Memorial Park and Acacia Memorial Park Permanent Care Fund.

*Roberts, Shefelman, Lawrence, Gay & Moch, Brian L. Comstock,* and *William G. Tonkin,* for respondent King County Medical Blue Shield.

*Lane, Powell, Moss & Miller* and *G. Keith Grim,* for respondent Olympia Brewing Company.

*Clinton, Fleck, Glein & Brown* and *Russell R. Pearson,* for respondent Blue Cross Washington-Alaska, Inc.

HAMILTON, J.—Appellant, Department of Revenue, appeals a superior court judgment disallowing certain business and occupation tax assessments.

Respondent, John Sellen Construction Company, is a Washington general partnership and a general contractor. Respondent invested a small percentage of its gross revenues in short term investments such as time certificates, commercial paper, and repurchase agreements. In a 4-year period, these investments realized income amounting to approximately one-half of 1 percent of its gross income. Respondent, Olympia Brewing Company, also invested a portion of its gross income in time deposits, commercial discount notes, and corporate bonds. Respondent realized income from these investments which constituted .2 percent of its annual gross income.

Respondent, King County Medical Blue Shield, is a nonprofit corporation which provides prepaid medical care to King County residents. Respondent contracts with physicians to act as their agent in offering health care services to the public. Respondent pays for the physicians' services and patient-subscribers reimburse respondent by making

monthly payments. During the past few years, the cost of health care services exceeded subscriber contributions. Respondent maintains a reserve fund to absorb deficits, and this fund is invested in savings deposits, commercial paper, stocks, bonds, and real estate notes and mortgages. These investments produced a small percentage of respondent's gross income.

Respondent, Blue Cross Washington-Alaska, Inc., is also a health care service contractor which maintains a reserve fund to cover operating deficits. Respondent made similar investments with its reserve fund, and in a 4-year period these investments produced income representing approximately 3 percent of respondent's gross revenues.

Respondent, Acacia Memorial Park Permanent Care Fund (AMPPCF), is a trust fund established for the charitable purpose of providing care, maintenance, and upkeep of cemetery grounds. The corpus of the trust is made up of 10 percent of the purchase price of a grave or crypt in Acacia Memorial Park (AMP). The trustee may use only the income of the trust to maintain the cemetery grounds. RCW 68.44.080. The trustee also has the power to invest the assets of the trust in stocks, bonds, and bank deposits. These investments yielded interest and dividend income.[1]

AMP, a cemetery association organized pursuant to RCW 68.20, established AMPPCF to fund its maintenance activities. AMP uses the fund for the upkeep of the sold portions of the cemetery, which comprises over 70 percent of the cemetery grounds, and it utilizes its own assets to maintain the remainder of the cemetery. AMP initially pays for all the maintenance expenses and receives a reimbursement from AMPPCF for the upkeep of the sold portions of the grounds.

Appellant audited respondents and assessed the business

---

[1]In 1974, the total value of the trust fund corpus was $1,013,524, and the 1973 net income of the trust was approximately $50,000. These figures are representative of the trust's income and corpus in recent years.

and occupation tax upon their investment incomes.[2] Appellant also assessed the tax against AMP for the reimbursement funds it received from AMPPCF. Some of the respondents challenged the assessments and, following an administrative hearing, received appellant's determinations upholding the assessments. They then appealed the respective decisions to the Superior Court. Other respondents filed their appeals directly in the Superior Court. These appeals were consolidated, and the Superior Court entered a summary judgment in respondents' favor. Appellant has appealed this judgment.

In order to resolve this appeal, we must interpret a number of legislative enactments. Respondents' investment incomes are business activities within the meaning of RCW 82.04.140.[3] RCW 82.04.220 states:

> There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.

Respondents' investment incomes are subject to a business and occupation tax pursuant to RCW 82.04.220, unless they are exempted by RCW 82.04.430(1).[4] This provision states:

> In computing tax there may be deducted from the measure of tax the following items:
> (1) Amounts derived by persons, other than those engaging in banking, loan, security, or other financial businesses, from investments or the use of money as such,

---

[2] Respondents were assessed the following amounts for approximately a 4-year period:

| | |
|---|---|
| Sellen Construction Company | $ 2,933.55 |
| Acacia Memorial Park | 2,108.34 |
| Acacia Memorial Park Permanent Care Fund | 4,260.25 |
| Olympia Brewing Company | 16,124.41 |
| Blue Cross Washington-Alaska, Inc. | 62,376.25 |
| King County Medical Blue Shield | 38,877.56 |

[3] "'Business' includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly." RCW 82.04.140.

[4] Respondents are persons within the meaning of RCW 82.04.220 and RCW 82.04.430. *See* RCW 82.04.030.

and also amounts derived as dividends by a parent from its subsidiary corporations;

The investment incomes clearly are "[a]mounts derived by persons . . . from investments or the use of money as such". Thus, respondents' incomes are deductible unless respondents are "engaging in banking, loan, security, or other financial businesses". It is appellant's position that respondents are "financial businesses" within the meaning of the deduction statute.[5] We disagree, and affirm the trial court's decision allowing the deductions pursuant to RCW 82.04.430(1).

■■ A number of rules of statutory construction support our interpretation of the deduction statute. Words in a statute are given their ordinary and common meaning absent a contrary statutory definition. *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976); *see Publishers Forest Prods. Co. v. State*, 81 Wn.2d 814, 816, 505 P.2d 453 (1973). The words "financial businesses" are not defined in the statute, and the common meaning of the phrase contemplates a business whose primary purpose and objective is to earn income through the utilization of significant cash outlays. Respondents' investment incomes represent a very small percentage of their gross revenues.

---

[5]Appellant cites *Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 463 P.2d 622 (1970), and *Clifford v. State*, 78 Wn.2d 4, 469 P.2d 549 (1970), to support its position. These decisions do not apply to this case. The *Rena-Ware* decision merely recognizes the power of appellant to tax the multiple activities of a unitary business. In that case, the interstate commerce clause prevented the state from taxing out-of-state orders for cookware. This court, however, approved a tax on the service charge of the accounts because the taxpayers serviced the accounts in Washington. The decision did not concern RCW 82.04.430 or the words "financial businesses."

In *Clifford v. State, supra*, the taxpayer was in the business of subdividing and selling real estate. The court sanctioned the tax on the interest received on real estate installment contracts pursuant to RCW 82.04.290. RCW 82.04.400 (repealed in 1970) allowed an exemption for interest received by financial institutions. The taxpayer claimed he was akin to a financial institution and should be allowed the RCW 82.04.400 deductions. This court rejected the taxpayer's argument and held that he was not a financial institution. The taxpayer did not raise the issue of the applicability of RCW 82.04.430(1).

■ If we adopt appellant's interpretation of RCW 82.04.430(1), then few taxpayers, if any, making incidental investments of surplus funds could receive the deduction. Appellant equates investing any income with being a financial business and, in effect, this renders the statute a nullity. By interpretation we should not nullify any portion of the statute. *See Public Hosp. Dist. 2 v. Taxpayers of Pub. Hosp. Dist. 2*, 44 Wn.2d 623, 269 P.2d 594 (1954); *Group Health Coop. v. King County Medical Soc'y*, 39 Wn.2d 586, 237 P.2d 737 (1951). Further, the legislature does not engage in unnecessary or meaningless acts, and we presume some significant purpose or objective in every legislative enactment. *Knowles v. Holly*, 82 Wn.2d 694, 513 P.2d 18 (1973); *Roza Irrigation Dist. v. State*, 80 Wn.2d 633, 497 P.2d 166 (1972); *Kelleher v. Ephrata School Dist. 165*, 56 Wn.2d 866, 355 P.2d 989 (1960).

■ Courts also resort to dictionaries to ascertain the common meaning of statutory language. *See, e.g., Intermediate School Dist. 105 v. Yakima County*, 81 Wn.2d 443, 445, 503 P.2d 104 (1972); *Crown Zellerbach Corp. v. State*, 53 Wn.2d 813, 815, 328 P.2d 884 (1958). *Webster's Third New International Dictionary* (1968) defines a "financial institution" as

> an enterprise specializing in the handling and investment of funds (as a bank, trust company, insurance company, savings and loan association, or investment company).

This definition does not accurately describe respondents' activities.

■ The "ejusdem generis" rule of statutory construction also lends force to our interpretation of the deduction statute. *State v. Thompson*, 38 Wn.2d 774, 777, 232 P.2d 87 (1951), states this rule:

> [G]eneral terms appearing in a statute in connection with precise, specific terms, shall be accorded meaning and effect only to the extent that the general terms suggest items or things similar to those designated by the precise or specific terms. In other words, the precise terms modify, influence or restrict the interpretation or

application of the general terms where both are used in sequence or collocation in legislative enactments.

Thus, the generic term "other financial businesses" must be read in conjunction with the terms "banking, loan, and security." The generic term only extends to businesses that are comparable to one of the specific categories but technically not falling within one of the three categories. Respondents' businesses are not similar to banking, loan, or security businesses.

Appellant's previous interpretation of the statute is consistent with our position. RCW 82.04.430(1) in practically identical form and language has been a part of the revenue act since 1935, and thereunder appellant audited respondents for a number of years and approved their deductions for investment incomes. For example, respondents, King County Medical Blue Shield and AMPPCF, have deducted investment income for over 30 years, and appellant never challenged this practice until the present case. In one of its administrative decisions, appellant stated:

> But it does not follow that every act of business or every investment and grant of the use of money is held to be financial business. . . . Where the activities involved are essentially in competition with financial businesses and this is a regular part of the taxpayer's normal business practice, the department believes that the activities constitute financial business and are subject to tax.

*State Dep't of Revenue, Excise Tax Bull.*, No. 368.04.224 (June 12, 1970).[6]

Finally, respondent AMP presents a somewhat different problem. Appellant assessed a tax against AMP for the receipt of the reimbursements from AMPPCF. Respondent claims these reimbursements are excluded from taxation on the basis of WAC 458-20-111.[7] If a taxpayer performs ser-

---

[6]Appellant's recent determinations, however, reflect a change in its interpretation of RCW 82.04.430(1). The determinations seek to restrict the application of the deduction and are consistent with appellant's decision to deny the deductions in this case. *See, e.g.,* State Dep't of Revenue, Determination No. 74-43 (March 5, 1974).

[7]WAC 458-20-111, in part, provides:

"There may be excluded from the measure of tax amounts repre-

vices as an agent rather than an independent contractor, and receives a reimbursement from the principal for the funds expended, then WAC 458-20-111 excludes the reimbursement from taxation. The trust agreement establishes the relationship between AMP and AMPPCF, and this agreement authorizes AMP to make expenditures and provides for the reimbursement from the trust fund of the expenditures. The agreement establishes a principal-agent relationship and, therefore, AMP is entitled to the exclusion contained in WAC 458-20-111.

The judgment is affirmed.

STAFFORD, C.J., and HUNTER, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

WRIGHT, J. (dissenting)—I dissent. The rule is well known that a statute which is plain on its face will generally mean exactly what it says. In such a case there is no room for construction or interpretation. *State v. Roth*, 78 Wn.2d 711, 479 P.2d 55 (1971). This rule has very few exceptions. However, one important exception exists. That is, the strict letter of a statute will not control over the obvious legislative intent and meaning. *Cory v. Nethery*, 19 Wn.2d 326, 142 P.2d 488 (1943); *Howlett v. Cheetham*, 17 Wash. 626, 50 P. 522 (1897); *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 510 P.2d 243 (1973). If the legislative intent is obvious, that will control. *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971).

This litigation involves an exemption from the effect of a taxing statute. Such exemptions are to be strictly construed against the claim of exemption. *Pacific Northwest Conf. v.*

---

senting money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.

"The foregoing is limited to cases wherein the taxpayer, as an incident to the business, undertakes, on behalf of the customer, guest or client, the payment of money, either upon an obligation owing by the customer, guest or client to a third person, or in procuring a service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer . . ."

*Barlow,* 77 Wn.2d 487, 463 P.2d 626 (1969); *Yakima First Baptist Homes, Inc. v. Gray, supra.*

In this case, each of the corporations who were parties plaintiff (respondents) received substantial income from investments. Such income was the result of engaging in "financial business." It matters not that each of respondents had other business activities which in each instance was the primary or principal business of the corporation. It is not at all uncommon for the legislature to provide for different tax rates upon different parts of the business activity of one corporation. *Rena-Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 463 P.2d 622 (1970). In this case it seems incredible that the legislature intended to exempt large corporations from paying the business and occupation tax on substantial income.

If the majority opinion herein prevails, then it certainly would seem appropriate for the legislature to examine this situation and clarify the legislative intent to the end that an unjust escape from taxation would be ended.

ROSELLINI, J., concurs with WRIGHT, J.