[No. 2626. Decided September 27, 1897.]

## L. S. HOWLETT, v. NEAL CHEETHAM.

REPEAL OF STATUTES — INTENT OF LEGISLATURE — CONSTITUTIONAL LAW — SUBJECT AND TITLE OF ACT — COMMISSIONER OF ARID LANDS.

When it appears from the construction of an act as a whole, especially in view of the history of the passage of the act, that

a clause therein repealing a former act was included through inadvertence, such words of repeal, although absolute in themselves, will be held to be qualified by the intention of the legislature as manifested in other parts of the same act.

The fact that the legislature, subsequent to the passage of an act purporting to repeal an existing law, at the same session also passed an act amending the law which the prior act purported to repeal, tends to establish that such purported repeal was an oversight, when the matter of getting at the intent of the legislature is necessary in the construction of a statute.

That portion of an act which attempts to repeal a prior act is unconstitutional and void, when the two acts are not upon the same subject matter and the subject of the repeal of the prior act is not expressed in the title of the subsequent act.

The office of commissioner of arid lands provided for in the act of March 22, 1895 (Laws 1895, p. 452), is not abolished or abrogated by the act of March 16, 1897 (Laws 1897, p. 263, § 70), which contains a clause purporting to repeal said act of 1895, nor by the act of March 19, 1897 (Laws 1897, p. 345), which, in amending said act of 1895, while attempting to impose the duties of arid land commissioner upon an officer to be known as the commissioner of irrigation, does not in fact abrogate the office of arid land commissioner, as the section providing for the appointment, qualification and compensation of the latter is left undisturbed and no provision for the appointment of a commissioner of irrigation is made, thus manifesting the legislative intent to regard the terms as synonymous and made in reference to the same officer.

### Original Application for Mandamus.

*Bogle & Rigg*, for plaintiff.

*Thomas M. Vance*, Assistant Attorney General, for defendant.

The opinion of the court was delivered by

ANDERS, J.—This is virtually an application for a writ of mandate. The complaint alleges that the plaintiff is the lawful commissioner of arid lands of the state of Washington; that he was duly appointed and commissioned as such for the term of four years commencing on the 16th

day of June, 1895, and ending on the 16th day of June, 1899, and duly qualified and entered into possession of said office on the said 16th day of June, 1895, and has been in possession of said office and has discharged the duties thereof from that time to the present, and is at this time in the possession and discharging the duties of said office; that the said defendant Neal Cheetham was the duly elected, qualified and acting auditor of said state, and has been such officer since about the     day of January, 1897; that the salary of the plaintiff, as such commissioner of arid lands for and during the month of April, 1897, amounting to the sum of $166.66, is past due and wholly unpaid; that there is also due to plaintiff as such officer, from the state of Washington, the sum of $10 for rent of office for the month of April, 1897, occupied by plaintiff as such officer, and the further sum of $17 for expenses incurred by plaintiff as such officer in the discharge of his official duties during said month of April, aggregating the sum of $193.66, which sum was lawfully due and owing to plaintiff from said state of Washington; that on or about the 30th day of April, 1897, plaintiff presented his account covering the items above set out, and supported and verified by proper and legal vouchers, to said defendant as such auditor, and demanded that he audit the same and issue to plaintiff a proper warrant or warrants on the state treasurer for the amount thereof; and that said defendant, on said 30th day of April, 1897, did approve said account and indorsed his approval thereupon, but refused to issue a proper warrant or warrants to plaintiff for said sum, or any part thereof, and refused to officially act upon the said account, and declines and refuses to recognize plaintiff as such commissioner of arid lands; that it is the duty of said defendant as such auditor to audit said ac-

count and to issue to plaintiff the proper warrant or warrants upon the treasurer of said state for the amount thereof, and disregarding his duty in that respect, said defendant refused to issue to plaintiff a warrant for said sum or any part thereof; and prays that the defendant, as such auditor, be compelled to audit said account and to issue to plaintiff a proper warrant or warrants upon the treasurer of the state for the amount thereof and for costs of this action.

No written answer or demurrer was filed by the defendant to this complaint, but defendant appeared by his counsel and, by consent of plaintiff, orally interposed the defense that the office of commissioner of arid lands was abolished, and the act of March 22, 1895 (Laws 1895, p. 452), under and by virtue of which the plaintiff was appointed commissioner of arid lands, was repealed by the act of March 16, 1897, and that plaintiff had, therefore, no right to the warrant demanded and defendant rightly refused to issue the same to him.

Section 70 of this act of March 16, 1897 (Laws 1897, p. 263), provides, among other things, as follows:

"An act entitled 'An act accepting the terms of the act of Congress, approved August 18, 1894, providing for the reclamation, settlement and disposition of the one million acres of arid land granted therein, making appropriation therefor, and declaring an emergency' (excepting section one of said last mentioned act), approved March 22, 1895, are hereby expressly repealed."

And it is insisted by the learned counsel for the defendant that this repealing clause is susceptible of but one meaning, and that there is therefore no escape from enforcing it in accordance with its terms.

While it is a primary and general rule in the construction of statutes that effect should be given to words which

are plain, unambiguous and well understood, according to their natural and ordinary sense and meaning, yet it is well settled that where the literal interpretation of a particular word or phrase is repugnant to the intent of the legislature plainly manifested by the act taken as a whole, such interpretation ought not to prevail. The only object of construction is to ascertain the meaning and intention of the legislature, and when that intention is discovered it is controlling, although it may be contrary to the strict letter of the statute.

"It is indispensable," says Sutherland in his valuable treatise on Statutory Construction, § 218, "to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, the key is found to all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention."

And in illustration of the principle that the intention of the whole act will control interpretation of the several parts, that learned author further observes, in § 242, that "words of absolute repeal have been held to be qualified by the intention manifested in other parts of the same act;" and as authority for this last assertion, he refers to the well considered case of *Smith v. People*, 47 N. Y. 330, which is directly in point here. In that case the court had under consideration an act entitled "an act to reorganize the local government of the city of New York." By that act it was provided that a certain other act referred to by its title, amending the charter of the city of New York, was repealed, and the court held that, notwith-

standing this absolute language, the act was not thereby affected or repealed. In the course of its opinion the learned court said:

"In the construction of statutes, effect must be given to the intent of the legislature whenever it can be discerned, though such construction seem contrary to the letter of the statute. That intent must be primarily sought in the language of the statute, and if the words employed have a well understood meaning, are of themselves precise and unambiguous, in most cases no more can be necessary than to expound them in their natural and ordinary sense. The words in such case ordinarily best declare the intention of the legislature. (*Sussex v. Peerage*, 11 C. &F. 86; *Newell v. People*, 3 Seld. 97; *McCluskey v. Cromwell*, 1 Kern. 593.) These rules are elementary, but it is equally well settled that words, absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time, and to which they relate, or are applied. A literal interpretation of words in most common use, and having a well defined meaning as ordinarily used, would not unfrequently defeat rather than accomplish the intent of the party using them. If in reading a statute in connection with other statutes passed at, or about the same time, a doubt exists as to the force and effect the legislature intended to give to particular terms, that is as to the meaning which it was intended they should bear and have in the connection in which they are used, it is also competent to refer to the circumstances under which, and the purposes for which a statute is passed, to ascertain the intent of the legislature. The ground and cause of the making of a statute explains the intent. (Com. Dig. Parliament, R. 11.) . . . If the repeal of a statute is by express and positive terms, and there is no legitimate evidence in or out of the act of an intent to qualify and restrict the operation, that is, no limitation or qualification, expressed or implied, the only question is as to the effect of the repeal, and the rule is that for all purposes the

law repealed is as if it had never existed. . . . A clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments, and the intent must prevail over literal interpretation. One part of an act of the legislature may be referred to in aid of the interpretation of other parts of the same act. So in case of doubt or uncertainty, acts *in pari materia*, passed before or after, and whether repealed or unrepealed, may be referred to in order to discern the intent of the legislature in the use of particular terms; and within the same rule, and the reason of it, cotemporaneous legislation, although not precisely *in pari materia*, may be referred to for the same purpose. Statutes *in pari materia* relate to the same subject, the same person or thing, or the same class of persons or things, and are to be read together, for the reason that it is to be implied that a code of statutes relating to one subject is governed by the same spirit, and are intended to be harmonious and consistent. They are to be taken together as if they were one in law, as one statute."

Applying the principles so clearly enunciated in the foregoing quotation, we are irresistibly forced to the conclusion that it was not the real intention of the legislation to repeal the act of March 22, 1895, notwithstanding the words of absolute repeal employed by the legislature. It will manifestly appear from an examination of this so-called repealing act, and from the history of its passage, that the legislature at the time of its final enactment did not have in mind either the office of arid land commissioner or the subject of arid lands. The arid land commissioner is not mentioned anywhere in the body of the act, nor is the subject of arid lands mentioned except in one instance, and that was a manifest inadvertence on the part of the legislature. As the bill was first introduced (as House Bill No. 224), the title of the act contained the clause, " and for the selection and reclamation of arid lands." But these

words were eliminated before the final passage of the bill.' And in section 1 it was originally provided that the commissioner of public lands, secretary of state and superintendent of public instruction should constitute the board of appraisers, harbor line commission "and arid land commission," which latter words were expunged from the section, as well as the words "reclamation of arid lands." So, in section 2, the words, "and for the selection and reclamation of arid lands," were omitted from the act as it finally passed. Moreover, the original sub-title "Arid Lands," under which was prescribed the duty of the arid land commission, the creation of which was originally contemplated, was stricken from the bill, and none of the provisions of the bill relating expressly to " arid lands " and including four separate sections, are contained in the law as it now stands. The act, as will be seen, deals exclusively with the state's granted lands, and the tide and shore lands, and provides in detail for the selection and disposition of the former, and the sale, leasing, etc., of the latter, and none of its provisions are at all applicable to the arid lands conditionally proffered to the state by section 4 of the act of Congress of August 18, 1894 (28 U. S. St. at Large, 422).

If anything further is necessary to be shown in order to indicate the intention of the legislature in regard to the act of March 22, 1895, it will be found in the act of March 19, 1897 (Laws 1897, p. 345), which is entitled,

"An act to amend an act entitled 'An act accepting the terms of the act of Congress approved August 18, 1894, providing for the reclamation, settlement and disposition of the one million acres of arid lands granted therein, making appropriation therefor and declaring an emergency,' approved March 22, 1895, and providing further for carrying into effect said grant."

It cannot be presumed that the legislature deliberately undertook, by this act, to amend an act which they had just repealed, or that they attempted to achieve an impossibility. A repealed law is incapable of amendment. 23 Am. & Eng. Enc. Law, pp. 276, 277.

Section 2 of this amended act provides for the appointment, qualification and compensation of a commissioner of arid lands, and this section was left undisturbed by the amendatory act. It is true that, in the act as amended, the *duties* imposed upon the commissioner of arid lands by the original act of 1895 are to be performed by the commissioner of irrigation, but it nowhere appears, either in that, or any other, act that we are aware of, or have been able to discover, that any such officer has either been provided for or appointed; but these provisions alone do not abrogate the office of arid land commissioner. That the act creating the office of arid land commissioner has not been repealed results also from another consideration, viz.: that the office of commissioner of arid lands is neither mentioned in the body of the alleged repealing act or " expressed " in the title, and the repealing clause is therefore in conflict with section 19 of article 2 of the constitution, providing that no bill shall embrace more than one subject, and that shall be expressed in the title. We do not wish to be understood as saying that it is necessary in all cases that the repeal of a given statute should be expressed *in terms* in the title. If the subject of a statute is to repeal another statute, then manifestly that subject must be fairly expressed in the title. If, however, the repealing act is upon the same subject as the act repealed, the repeal is properly connected with the subject matter and the repealing section is valid notwithstanding the title is silent on that subject. Cooley, Constitutional Limitations (5th ed.), 175.

But such repealing statute must not relate to a different

subject from that in the statute sought to be repealed, for, if it does, the rule that we have just stated does not apply, and the subject of repeal must, like every other subject, be expressed in the title of the act. As we have already shown, the act of March 16, 1897, does not pretend to deal with the office of arid land commissioner or with the arid lands contemplated in the act of Congress, and therefore these subjects are not embraced in the act, and hence could not be legitimately expressed in the title. A title indicating a subject not embraced in the act itself is false and delusive in that respect and amounts to nothing. In fact, a title which is misleading and false is not constitutionally framed and will vitiate the act. Sutherland, Statutory Construction, § 90. But a title may be broader than the statute and still be good as to the subject it fairly indicates. Whether the whole act in question is unconstitutional, as claimed by plaintiff, it is not necessary here to determine or consider.

It follows from what we have said that the plaintiff is still commissioner of arid lands for the state of Washington, and entitled to the salary and expenses provided for by law. A peremptory writ of mandate will therefore be issued directing the defendant to issue and deliver to the plaintiff such warrant or warrants as he may be entitled to according to law.

DUNBAR and GORDON, JJ., concur.

REAVIS, J. (concurring specially).—Counsel for the defendant, state auditor, contends that the act of the legislature of March 22, 1895 (Laws 1895, p. 452), creating the office of commissioner of arid lands, was repealed by the act of March 16, 1897, and the office abolished. Section 70 of the latter act enumerates five former acts, mentioning them by title and date of passage,

and declares specially that they " are hereby expressly repealed." This act passed the senate March 11, 1897. In my opinion the title is sufficient to cover a repeal in the body of the act, of the law of 1895, creating the office of arid land commissioner. Neither do I think the title of the act approved March 16, 1897, contains more than one subject, and I think within the title the legislature could very well have provided for the reclamation of the arid lands granted to the state by Congress. The title of the act is to provide among other things for the " reclamation . . . . of the state's granted, school, tide, oyster and other lands." The word " reclamation " is apt when applied to arid lands; and a million acres of arid lands have been granted by Congress on certain conditions to the state, and therefore might well be referred to as " granted lands." I cannot therefore agree with the opinion of the court, in the second reason stated for the decision, to-wit, " that the office of commissioner of arid lands is neither mentioned in the body of the alleged repealing act or ' expressed ' in the title, and the repealing clause is therefore in conflict with section 19 of article 2 of the constitution, providing that no bill shall embrace more than one subject and that shall be expressed in the title." But, for the reason that the same legislature, composed of the same members, in a bill which passed both houses on the 11th of March, 1897, and was approved March 19, 1897 (Laws 1897, p. 345), relating to arid lands and amending completely the former law, has indicated in the title the act approved March 22, 1895, and provided further for carrying into effect that act, I am satisfied the legislature did not intend to repeal the act of 1895, providing for the " reclamation, settlement and disposition of the one million acres of arid lands granted therein." The amendatory act is complete, and the legislature also duly made

an appropriation for carrying its provisions into effect. The original act and the amendatory act must, in my judgment, be construed together, and, as stated in the opinion of the court, from the history of the bill containing the repealing clause, the language left therein repealing the act of 1895 was an inadvertence. All the authorities upon construction of legislative acts, including repealing clauses, seem to concur in the rule of construction here applied. The amendatory act of 1897 leaves the first two sections of the original act standing unchanged, commences with the third section, and thereafter amends almost completely the whole act.

I also view the term "commissioner of irrigation" as used in section 3 of the amendatory act of 1897, as synonymous with "commissioner of arid lands," and think that the amendatory act continues the duties of the office and imposes them upon the officer already named in the original law.