**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 15, 2020

*Steph, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 15, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

GARFIELD COUNTY )
TRANSPORTATION AUTHORITY; )
KING COUNTY; CITY OF )
SEATTLE; WASHINGTON STATE )
TRANSIT ASSOCIATION; )
ASSOCIATION OF WASHINGTON )
CITIES; PORT OF SEATTLE; )
INTERCITY TRANSIT; )
AMALGAMATED TRANSIT )
UNION LEGISLATIVE COUNCIL )
OF WASHIINGTON; and )
MICHAEL ROGERS, )
                      )
          Petitioners, )
                      )
                      )
WASHINGTON ADAPT; TRANSIT )
RIDERS UNION; and CLIMATE )
SOLUTIONS, )
                      )
    Intervenor-Petitioners, )
                      )
          v. )    No. 98320-8
                      )
STATE OF WASHINGTON, )
                      )
          Respondent, )
                      )
                      )
                      )
CLINT DIDIER; PERMANENT )
OFFENSE; TIMOTHY D. EYMAN; )

MICHAEL FAGAN; JACK FAGAN; )
and PIERCE COUNTY,                    )
                                                    )
    Intervenor-Defendants.        )
                                                    )    Filed:_October 15, 2020__
_____)

       GONZÁLEZ, J.— The people of our state have the power to propose and approve legislation. WASH. CONST. art. II, § 1. When the people act in their legislative capacity, they are, like any other legislative body, bound by constitutional constraints. Under our constitution, "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." WASH. CONST. art. II, § 19. Initiative Measure 976 (I-976) contains more than one subject, and its subject is not accurately expressed in its title. Accordingly, it is unconstitutional.

<div align="center">BACKGROUND</div>

       I-976 is the latest in a series of initiatives about reducing or eliminating local motor vehicle excise taxes, including taxes that have been pledged to support major transportation projects in our state. These efforts are a response to the legislature's decision to authorize "counties in the state's most populous region to create a local agency for planning and implementing a high capacity transportation system," which ultimately resulted in the creation of Sound Transit. LAWS OF 1992, ch. 101 (largely codified in ch. 81.112 RCW); *Cent. Puget Sound Reg'l Transit Auth. v. Miller*, 156 Wn.2d 403, 406-07, 128 P.3d 588 (2006). Authorized regional transit authorities were empowered to ask their voters to approve

<div align="center">2</div>

transportation system proposals and financing secured by local taxes and fees, including local motor vehicle excise taxes. RCW 81.112.030, .050, .130-.150. The legislature also empowered local transportation benefit districts and other local governments to impose taxes, including motor vehicle excise taxes, and fees to fund local transportation projects and to seek voter approval for additional funding. *E.g.*, LAWS OF 2005, ch. 336; ch. 36.73 RCW; ch. 82.80 RCW.

A "motor vehicle excise tax" is "a tax on the privilege of relicensing a motor vehicle for use on public roadways." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 802, 123 P.3d 88 (2005). Motor vehicle excise taxes are "based on the value of the vehicle, as set out by statute in a depreciation schedule." *Black v. Cent. Puget Sound Reg'l Transit Auth.,* 195 Wn.2d 198, 202, 457 P.3d 453 (2020) (citing former RCW 82.44.041 (1991)). Whether they are based on the value of the vehicle or are a flat fee can make a tremendous difference in the amount an individual will pay. For example, a 1 percent tax on a vehicle worth $100,000.00 would be $1,000.00. A 1 percent excise tax on a vehicle worth $1,000.00 would be $10.00. If instead there is a flat fee of $43.25, the relicensing of every vehicle would cost the same.

Sound Transit was formed in 1993. In 1996, voters in the counties of King, Pierce, and Snohomish approved a transportation proposal and a funding plan secured by local taxes and fees, including local motor vehicle excise taxes. *Id.*

3

Based on that vote, Sound Transit issued bonds secured by these local funding sources. *Id.* (citing *Pierce County v. State*, 159 Wn.2d 16, 24, 148 P.3d 1002 (2006) (*Pierce County* II)). Not long after those bonds were sold, some taxpayers began challenging the taxes and fees funding Sound Transit and other locally approved transportation projects through litigation, legislation, referenda, and initiatives. *See, e.g.*, *Pierce County* II, 159 Wn.2d 16; *Sheehan*, 155 Wn.2d at 795; *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 191, 11 P.3d 762 (2000) (*ATU*).

In 2018, initiative sponsors filed at least 13 initiatives concerning motor vehicle taxes. The attorney general drafted ballot titles for at least 9 of them. After receiving these ballot titles, the sponsors chose to proceed with I-976 and a ballot title that read:

> Initiative Measure No. 976 concerns motor vehicle taxes and fees.
>
> This measure would repeal, reduce, or remove authority to impose certain vehicle taxes and fees; limit annual motor-vehicle-license fees to $30, except voter-approved charges; and base vehicle taxes on Kelley Blue Book value.
>
> Should this measure be enacted into law?
>
> Yes [ ]
>
> No [ ]

Clerk's Papers (CP) at 1131, 316, 1253.  The ballot title appears to have been drawn from the "policies and purposes" section of I-976, which reads in relevant part:

> This measure and each of its provisions limit state and local taxes, fees, and other charges relating to motor vehicles. This measure would limit annual motor vehicle license fees to $30, except voter-approved charges, repeal and remove authority to impose certain vehicle taxes and charges; and base vehicle taxes on Kelley Blue Book.

CP at 1212.

The initiative passed statewide with about 53 percent of the vote, though it was rejected by about 53 percent of the voters in the Sound Transit region, about 60 percent of King County voters, and about 70 percent of San Juan voters, who depend heavily on ferries funded by motor vehicle excise taxes.

Several counties, cities, associations and private citizens (collectively challengers) challenged I-976's constitutionality.  These challengers argued that I-976 violated many provisions of our state constitution.  They argued that I-976 contained multiple subjects in violation of article II, section 19's single subject requirement. They also argued I-976 violated section 19's subject-in-title requirement because the ballot title falsely suggested voter-approved motor vehicle taxes would not be repealed.  In fact, the initiative repealed both current voter-approved taxes and fees, and the existing statutory mechanism for voter approval in the future.  Among many other things, plaintiffs also argued that the ballot title

falsely suggested vehicle license registration fees would be reduced to $30.00 when, in fact, the lowest would be $43.25.

The challengers successfully sought a preliminary injunction in King County Superior Court to block its implementation. The trial judge initially concluded that the plaintiffs were likely to prevail on the grounds that the ballot title was misleading. Meanwhile, several parties, including the initiative sponsors, a group of taxpayers, Pierce County, transit groups, and environmental groups were granted leave to intervene.

Most parties moved for summary judgment. At summary judgment, the trial judge largely upheld the initiative. The trial judge did find that the initiative violated the privileges and immunities clause of the state constitution by giving Kelley Blue Book a legislative privilege, but also that those provisions were severable. Those provisions would have replaced a statutory depreciation schedule for valuing vehicles with the values established by Kelley Blue Book. LAWS OF 2020, ch. 1, § 8 (I-976). The trial judge allowed further factual development on the city of Burien's impairment of contract claim under article I, section 23. The primary parties stipulated that direct review of the remaining issues was appropriate, and we accepted review. Amicus briefs in support of the challengers have been filed by the International Municipal Lawyers Association and Legal Scholars; San Juan County; the League of Women Voters of Washington; and the

Puyallup Tribe of Indians, the Nisqually Indian Tribe, and the Tribal

Transportation Planning Organization Transit Subcommittee.

<div align="center">ANALYSIS</div>

This case is here on appeal from summary judgment.  Our review is de novo.

*Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642,

652, 278 P.3d 632 (2012) (*WASAVP*) (citing *Pierce County v. State*, 150 Wn.2d

422, 429, 78 P.3d 640 (2003) (*Pierce County* I)).

In our state, the people have a constitutional power to propose and pass

legislation.  WASH. CONST. art. II, § 1(a).  When acting in this legislative capacity,

the people are subject to the constraints laid out in our constitution.  *ATU*, 142

Wn.2d at 204 (citing *State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 808, 982

P.2d 611 (1999)).  We presume initiatives are constitutional, and the challenger

bears the burden of establishing otherwise.  *Id.* (citing *Brower v. State*, 137 Wn.2d

44, 52, 969 P.2d 42 (1998); *Heavey*, 138 Wn.2d at 808).  Initiatives are read as the

average informed lay voter would read them.  *WASAVP*, 174 Wn.2d at 662

(quoting *W. Petrol. Imps., Inc. v. Friedt*, 127 Wn.2d 420, 424, 899 P.2d 792

(1995)).

1. Article II, section 19 single subject requirement

Under our constitution, "[n]o bill shall embrace more than one subject, and

that shall be expressed in the title."  WASH. CONST. art. II, § 19.  The challengers

<div align="center">7</div>

contend that I-976 violates article II, section 19's single subject requirement. This constitutional provision is liberally construed in favor of upholding legislation. *WASAVP*, 174 Wn.2d at 654 (citing *ATU*, 142 Wn.2d at 206).

Article II, section 19 serves three purposes. *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 24, 200 P.2d 467 (1948). First, it prevents "logrolling," where a popular measure is attached to an unpopular one to ensure passage of the unpopular measure. *Pierce County* I, 150 Wn.2d at 429-30 (citing *Wash. Fed'n of State Emps. v. State*, 127 Wn.2d 544, 554, 901 P.2d 1028 (1995)). Second, it "enlighten[s] the members of the legislature [and voters considering initiatives] against provisions in bills of which the titles give no intimation." *Yelle*, 32 Wn.2d at 24. Third, it informs the public through the regular publication of legislative proceedings about the subjects being considered. *Id.* Initiatives that contain more than one subject are void in their entirety. *City of Burien v. Kiga*, 144 Wn.2d 819, 825, 31 P.3d 659 (2001) (citing *Power, Inc. v. Huntley*, 39 Wn.2d 191, 200, 235 P.2d 173 (1951)). We construe legislation liberally to avoid a multiple subject problem, but we do not shirk from our responsibility to enforce the constitution's mandates. *See, e.g.*, *Lee v. State*, 185 Wn.2d 608, 622-23, 374 P.3d 157 (2016) (finding a two subjects violation in an initiative that both set a sales tax rate and proposed a constitutional amendment requiring a supermajority vote or voter approval to raise taxes); *ATU*, 142 Wn.2d at 217 (finding a two

subjects violation when an initiative set car tab fees at $30 and required a supermajority vote or voter approval to raise taxes).

I-976 has 17 sections. Briefly, section 1 of the initiative states that its purpose is to limit vehicle licensing costs. LAWS OF 2020, ch. 1, § 1 (I-976). Specifically,

> This measure and each of its provisions limit state and local taxes, fees, and other charges relating to motor vehicles. This measure would limit annual motor vehicle license fees to $30, except voter-approved charges, repeal and remove authority to impose certain vehicle taxes and charges; and base vehicle taxes on Kelley Blue Book rather than the dishonest, inaccurate, and artificially inflated manufacturer's suggested retail price (M[SR]P). Voters have repeatedly approved initiatives limiting vehicle costs. Politicians must learn to listen to the people.

*Id.*

Sections 2-5 are in the portion of the initiative labeled "LIMITING ANNUAL MOTOR-VEHICLE-LICENSE FEES TO $30, EXCEPT VOTER-APPROVED CHARGES." LAWS OF 2020, ch. 1.

Section 2 creates a new section in chapter 46.17 RCW that provides, among other things, "State and local motor vehicle license fees may not exceed $30 per year for motor vehicles, regardless of year, value, make, or model." *Id.* § 2(1). It defines "state and local motor vehicle license fees" as "the general license tab fees paid annually for licensing motor vehicles" but not "charges approved by voters after the effective date of this section." *Id.* § 2(2). "Vehicles" are broadly defined

as including cars, sport utility vehicles, light trucks, motorcycles, and motor homes. *Id.*

Section 3 reduces license fees on snowmobiles, some trucks, and commercial trailers. *Id.* § 3(1).

Section 4 also reduces license fees on light trucks. *Id.* § 4(1)(b).

Section 5 reduces fees that had been charged on electric and hybrid vehicles to mitigate their impact on the state's highways. *Id.* § 5(1).

Sections 6 and 7 are in the section labeled "REPEAL AND REMOVE AUTHORITY TO IMPOSE CERTAIN VEHICLE TAXES AND CHARGES." LAWS OF 2020, ch. 1.

Section 6 repeals the statutes that authorized transportation benefit districts to impose annual vehicle fees of up to $100 per vehicle and that authorized imposition of a local motor vehicle excise tax to support passenger-only ferries. *Id.* It also repeals a statute that imposed fees on motor home vehicles, a statute that imposed a passenger weight fee, and a statute that directed the use of those funds.

Section 7 repeals a sales tax on motor vehicles. *Id.*

The remaining 10 sections are in a section titled "BASE VEHICLE TAXES USING KELLEY BLUE BOOK VALUE." LAWS OF 2020, ch. 1.

Section 8 creates a new section in chapter 82.44 RCW that requires taxes to be based on Kelley Blue Book values. *Id.*

Section 9 requires the use of Kelley Blue Book values in taxpayer appeals. *Id.*

Section 10 removes regional transit authorities' power to levy and collect a special motor vehicle excise tax after a public vote. *Id.* § 10(4)(a)(ii). Sound Transit is currently the only regional transit authority in our state. By virtue of section 16, this provision takes effect only after outstanding bonds secured by the tax are retired, defeased, or refinanced. *Id.* § 16(1).

Section 11 eliminates the special motor vehicle excise tax previously approved by voters in the Sound Transit region, as well as some sales and use taxes. *Id*. § 11(2). It also eliminates the existing motor vehicle excise tax valuation method based on purchase price instead of Kelley Blue Book values. *Id.* § 11(1). It also takes effect only after outstanding bonds are retired, defeased, or refinanced. *Id.* § 16(1).

Section 12 creates a new section in chapter 81.112 RCW requiring Sound Transit to retire early, defease, or refinance existing bonds funded by previously voter-approved special motor vehicle excise tax funds if permissible under the bond contracts. *Id.* § 12(2). The initiative drafters may have been trying to avoid the impairment of contracts problem that was fatal to Initiative 776 (I-776) in *Pierce County* II, 159 Wn.2d at 24. Sections 10 and 11 come into effect only if Sound Transit can lawfully retire, defease, or refinance the bonds. *Id.* § 16(1).

Section 13 changes the maximum motor vehicle excise tax Sound Transit can seek approval from voters to impose from eight-tenths of a percent to two-tenths of a percent of a vehicle's value. *Id.* § 13(1). It comes into effect if Sound Transit does not retire, defease, or refinance existing bonds by March 31, 2020. *Id.* § 16(2).

Section 14 requires liberal construction. *Id.* § 14.

Section 15 makes any invalid provision of the initiative severable. *Id.* § 15.

Section 16 sets forth the time limits relevant to §§ 10, 11, and 13. *Id.* § 16.

Section 17 declares that the initiative shall be called "Bring Back Our $30 Car Tabs." *Id.* § 17.

Our single subject analysis is framed differently depending on whether the ballot title is general or restrictive. *ATU*, 142 Wn.2d at 209-211 (collecting cases). The parties agree that I-976 has a general title. In such cases, all that is required is "'rational unity between the general subject and the incidental subdivisions.'" *WASAVP*, 174 Wn.2d at 656 (internal quotation marks omitted) (quoting *State v. Grisby*, 97 Wn.2d 493, 498, 647 P.2d 6 (1982)). "[T]he existence of rational unity or not is determined by whether the matters within the body of the initiative are

germane to the general title and whether they are germane to one another." *Kiga*,

144 Wn.2d at 826 (citing *ATU*, 142 Wn.2d at 209-10).[1]

While the parties agree that the title is general, they disagree on how to

articulate the subject of the initiative. The State suggests I-976 has a general title

that expresses its subject as "motor vehicle taxes and fees." Corrected Br. of

Resp't State of Wash. at 17. Based in part on the sponsor's title, the challengers

suggest the general title expresses the subject of "'limiting' vehicle taxes and fees

paid at vehicle registration." Opening Br. of Appellants at 17 (noting that the

sponsors title the initiative "AN ACT Relating to **limiting** state and local taxes,

fees, and other charges relating to vehicles").

---

[1] We take this opportunity to overrule this court's opinion in *Price v. Evergreen Cemetery Co. of Seattle*, 57 Wn.2d 352, 357 P.2d 702 (1960). We may overrule a prior case when it is both incorrect and harmful. *Deggs v. Asbestos Corp.*, 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). *Price* is both. *Price* considered the constitutionality of a 1953 law that said, "It shall be unlawful for any cemetery under this act to refuse burial to any person because such person may not be of the Caucasian race." LAWS OF 1953, ch. 290, § 53, at 838. Section 53 was part of a larger bill with the title "AN ACT relating to the regulation of cemeteries." *Id.*, ch. 290. The majority concluded the bill had two subjects in violation of article II, section 19: "(1) civil rights, and (2) the endowment care funds of private cemeteries and the creation of a cemetery board." *Price*, 57 Wn.2d at 354. This was a strained and incorrect way to divide the subjects in the bill, all of which were germane to the subject of cemetery regulation. It is harmful for two reasons: first, because it suggests a more stringent standard than is required to survive an article II, section 19 challenge, second, and more importantly, the case is harmful because of Justice Mallery's concurrence, which condemns civil rights and integration. *Id.* at 355-58. "As judges, we must recognize the role we have played in devaluing black lives." Letter from the Wash. State Supreme Court to the Members of the Judiciary and the Legal Cmty. 1 (June 4, 2020) (addressing racial injustice). The *Price* concurrence is an example of the unfortunate role we have played.

We faced a somewhat similar situation in *Pierce County* I. There, the ballot title said:

> "Initiative Measure No. 776 concerns state and local government charges on motor vehicles. This measure would require license tab fees to be $30 per year for motor vehicles, including light trucks. Certain local-option vehicle excise taxes and fees used for roads and transit would be repealed."

*Pierce County* I, 150 Wn.2d at 427 (quoting record). We found that the subject was "limiting license tab fees on cars and light trucks." *Id.* at 436. However, while the parties disputed the subject, it was not a major issue in the case.

By contrast, determining the subject of the initiative was a major issue in *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 71 P.3d 644 (2003). In that case, the ballot title read, "'Shall it be a gross misdemeanor to capture an animal with certain body-gripping traps, or to poison an animal with sodium fluoroacetate or sodium cyanide?'" *Id.* at 627 (quoting record). The challengers argued that the initiative contained two subjects, killing animals with poison and killing animals with body-gripping traps. *Id.* at 635. The State argued that the subject was the humane treatment of animals. *Id.* We rejected both the challengers' distillation as overly restrictive and the State's as overly broad. *Id.* at 635-36. Instead, we made "[a] more moderate interpretation" and found the subject "deals with banning methods of trapping and killing animals." *Id.* at 636. Given that, we found that the different provisions relating to traps and to poison

were germane to each other and that the initiative did not violate article II, section 19's single subject requirement. *Id.*

Similarly, in *WASAVP*, we rejected a single subject challenge to an initiative that privatized liquor sales. 174 Wn.2d at 659-60. The ballot title for that initiative read:

> "Initiative Measure No. 1183 concerns liquor: beer, wine, and spirits (hard liquor).
>
> "This measure would close state liquor stores and sell their assets; license private parties to sell and distribute spirits; set license fees based on sales; regulate licensees; and change regulation of wine distribution.
>
> "Should this measure be enacted into law?
>
> "[ ] Yes
>
> "[ ] No"

*Id.* at 647 (quoting record). The challengers argued that the subject of the initiative was liquor sales privatization and that provisions in the initiative that earmarked revenue for public safety, privatized wine distribution, impacted liquor advertising, and modified the State's policy on liquor were all unconstitutional separate subjects. *Id.* at 656. Without specifically accepting or rejecting the challengers' formulation of the subject, we rejected their challenge. *Id.* at 656, 660. We found "an obvious connection" between liquor sales and public safety. *Id.* at 657. We found a close connection between liquor and wine, especially as they "share the common distinction of being liquor and have been governed as such by the same

act for decades." *Id.* at 659. We concluded that advertising was clearly germane and that policy changes were not separate subjects for purposes of article II, section 19. *Id.* at 659-60.

Similar to the initiative at issue in *Pierce County* I and II, here, we conclude that the subject expressed in the ballot title is "limiting vehicle taxes and fees."

The challengers contend that several provisions in I-976 are not germane to each other or to the general subject. Without reaching all of their arguments, we agree that section 12, which requires Sound Transit to retire, defease, or refinance bonds, is not germane to limiting vehicle taxes and fees, and the provisions of the initiative that carry out that subject. Thus, section 12 is an unconstitutional second subject.

This court faced a very similar challenge to I-776 in *Pierce County* I and II. 150 Wn.2d at 432-33*; Pierce County* II, 159 Wn.2d at 48-49. That case involved an initiative that reduced motor vehicle excise taxes and fees, and repealed taxes that had been pledged to repay bonds. *Pierce County* II, 159 Wn.2d at 21-22; LAWS OF 2003, ch. 1 (I-776). In addition to the operative sections of the initiative that repealed or reduced taxes and fees, two sections called for, but did not require, existing bonds secured by those taxes to be retired and a future vote held before

any further sale.  LAWS OF 2003, ch. 1, §§ 1, 7.[2]  The trial court found these

sections created a second subject in violation of article II, section 19.  *Pierce*

*County* I, 150 Wn.2d at 432-33.  Over a forceful dissent, this court reversed on the

grounds "that policy expressions in a bill or initiative measure do not contribute

additional 'subjects' within the meaning of article II, section 19." *Id.* at 433.  The

dissent disagreed, characterizing the initiative as containing

> at least two subjects.  First, it limits the amount state and local governments may charge for motor vehicle licensing. Initiative Measure 776 (I-776) §§ 2, 3, 4, 6 & 8. Second, it calls for four counties to halt development of a voter-approved light rail transit system until the funding mechanisms are revisited and reapproved. I-776 §§ 1, 7. These subjects are not rationally related, and therefore the initiative violates our constitution.

*Id.* at 443 (Chambers, J., dissenting).  In Justice Chambers' view,

> [t]he evils of logrolling are not eliminated (though they may be diminished) merely because some text is inoperative. Further, the proponents of future legislation will be encouraged to add inoperative subjects to sell their proposal with empty (and probably unfunded) promises. Results could range from whimsical to menacing. A group seeking the decriminalization of certain drugs would be wise to seek votes from older voters by adding an inoperative subject demanding legislation legalizing the production of

---

[2] Section 7 said:

> If the repeal of taxes in section 6 of this act affects any bonds previously issued for any purpose relating to light rail, *the people expect transit agencies to retire these bonds using reserve funds* including accrued interest, sale of property or equipment, new voter approved tax revenues, or any combination of these sources of revenue. *Taxing districts should abstain from further bond sales* for any purpose relating to light rail until voters decide this measure. *The people encourage transit agencies to put another tax revenue measure before voters* if they want to continue with a light rail system dramatically changed from that previously represented to and approved by voters.

LAWS OF 2003, ch. 1, § 7 (emphasis added).

generic versions of currently patented and highly priced drugs to reduce the costs of medications. The same group might seek votes from tax foes by demanding legislation repealing the sales tax on all pharmacologically related products. . . . [T]he confusion and distraction will not serve our State and is prohibited by our constitution. The potential and temptations for creative logrolling have few limits. Our constitution, read properly, forbids embracing two subjects in one bill whether the subjects are operative or not.

*Id.* at 445 (Chambers, J., dissenting). Because of the way the case was presented in *Pierce County* I, a majority of the court never reached whether an *operative* requirement to retire bonds secured by repealed taxes would have violated the single subject rule.

But in *Pierce County* II, the parties' arguments did require the court to reach whether an operative requirement to retire bonds secured by repealed taxes was germane to limiting taxes and fees. *Pierce County* II primarily concerned whether I-776 violated article II, section 23 of the state constitution by impairing contracts with bondholders by repealing taxes that secured existing bonds. 159 Wn.2d at 22-23. Defenders of I-776 suggested that any unconstitutional impairment of contracts could be resolved by making section 7 of the initiative mandatory and directing Sound Transit to retire its bonds. We rejected that argument, concluding that crucial to our determination was section 7 of the initiative being precatory, mere "policy fluff" and not enforceable. Section 7 of the initiative provided in part that "[i]f the repeal of taxes in section 6 of this act affects any bonds previously issued for any purpose relating to light rail, the people expect transit agencies to

18

retire these bonds." LAWS OF 2003, ch. 1 § 7 (I-776). The intervenors ask this court to "revive" this inoperative part of the initiative, contrary to both the contract clause and article II, section 19 of the constitution. *See Pierce County* I, 150 Wn.2d at 444 (Chambers, J. dissenting) (suggesting that I-776 violates Washington Constitution article II, section 19 because section 7 of the initiative constitutes a second subject: "$30 license tabs across the entire state are not germane to the financing" of a local transit system).

> The law should not be construed to do indirectly what it cannot do directly. *Gelpcke v. City of Dubuque*, 68 U.S. (1 Wall.) 175, 192, 17 L. Ed. 520 (1864) ("It is almost unnecessary to say, that what the legislature cannot do directly, it cannot do indirectly. The stream can mount no higher than its source."); *W. River Bridge Co. v. Dix*, 47 U.S. (6 How.) 507, 516, 12 L. Ed. 535 (1848) ("All the powers of the states, as sovereign states, must always be subject to the limitations expressed in the United States Constitution . . . . What is forbidden to them, and which they cannot do directly, they should not be permitted to do by color, pretence, or oblique indirection."). We will not give effect to a provision that would result in a violation of the single subject requirements by directing the parties to order their financial affairs in a manner that coerces compliance with unlawful legislation. To do so would, in Chief Justice Marshall's words, "subvert the very foundation of all written constitutions." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L. Ed. 60 (1803).

*Pierce County* II, 159 Wn.2d at 48-49 (alteration in original). I-976 suffers from the same flaw. Simply put, section 12 is a separate subject in violation of article II, section 19. It is not mere "policy fluff" as was the similar provision in I-776. *Id.* at 48. Section 12 is a specific directive to retire, defease, or refinance existing

bonds, if possible.  This is a separate subject from "limiting vehicle taxes and fees."  Accordingly, I-976 violates article II, section 19's single subject rule.

While *Pierce County* II is dispositive, there are other difficulties with combining a requirement to retire, defease, or refinance existing bonds that secure a specific existing project with more general statutory changes.  We have regularly found two subjects in violation of article II, section 19 when a measure both contained a one-time required action (for example, building a toll road from Tacoma to Everett) and a broader systematic change in the law (for example, empowering a state agency to establish and operate a system of toll roads).  *Wash. Toll Bridge Auth. v. State*, 49 Wn.2d 520, 521, 523-25, 304 P.2d 676 (1956).  Similarly, we found two subjects when an initiative combined a one-time refund of taxes with systematic changes to the property tax assessment system.  *Kiga*, 144 Wn.2d at 827.  We also found two subjects when an initiative set car tabs at $30 and required voter approval for tax increases.  *ATU*, 142 Wn.2d at 217.  A specific direction to Sound Transit to retire, defease, or refinance the bonds is akin to a one-time refund of taxes, the setting of car tabs at $30, and the building of a single toll road; the larger changes to the motor vehicle excise tax system are akin to the systematic changes to the property tax system, the change to the requirements for tax increases, and the creation of a toll road authority, rendering it unconstitutional.

While not dispositive, combining such general and specific provisions in a single bill raises article II, section 19 concerns.

Similarly, we have found constitutional concerns in bills that combine unrelated local and statewide effects, as was the case in *Washington Toll Bridge Authority*, 49 Wn.2d at 523-24. Again, in that case, a single act directed a state agency to build a toll road between high-population cities and dramatically increased that state agency's powers. *Id.* at 523 (citing LAWS OF 1955, ch. 268). The challengers argue this is analogous to the relationship between section 12, which, in effect, directs a single regional transportation district, Sound Transit, to retire, defease, or refinance bonds, and the bulk of the rest of the initiative, which makes significant changes to motor vehicle excise taxes generally. Again, while not dispositive, it is evidence of two subjects.

Consistent with our opinion in *Pierce County* II, we find section 12 creates a separate subject from the main subject in the initiative, limiting vehicle taxes and fees. We do not reach whether the other challenged provisions of I-976 create unconstitutional separate subjects.

2. Article II, section 19 subject-in-title requirement

The challengers, joined by the League of Women Voters of Washington, argue the initiative also violates article II, section 19's subject-in-title requirement. They contend the ballot title is misleading because, among other things, it

incorrectly suggests motor vehicle excise taxes will be reduced to $30, that taxes previously approved by voters will survive, and that voters can still approve taxes in the future.

The ballot title of an initiative is the title for purposes of an article II, section 19 analysis. *WASAVP*, 174 Wn.2d at 655 (citing *Wash. Fed'n of State Emps.*, 127 Wn.2d at 555). The ballot title consists of the subject statement, the concise description, and the question of whether the measure should be enacted into law. *Id.* (citing RCW 29A.72.050). Words in a ballot title are given their common, ordinary meanings, and not a hypertechnical legal interpretation. *See id.* at 661-62 (quoting *ATU*, 142 Wn.2d at 226). Instead, it is read as the average informed voter would read it. *Id.* at 662 (quoting *W. Petrol. Imps.*, 127 Wn.2d at 424).

For the purpose of a subject-in-title analysis, "a title complies with the constitution if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." *Young Men's Christian Ass'n v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963); *ATU*, 142 Wn.2d at 217. "'The title to a bill need not be an index to its contents; nor is the title expected to give the details contained in the bill.'" *Wash. Fed'n*, 127 Wn.2d at 555 (quoting *Treffry v. Taylor*, 67 Wn.2d 487, 491, 408 P.2d 269 (1965)).

While the title need not be an index to the contents of the bill, it must not be misleading. "[T]he material representations in the title must not be misleading or

false, which would thwart the underlying purpose of ensuring that 'no person may be deceived as to what matters are being legislated upon.'" *WASAVP*, 174 Wn.2d at 660 (quoting *Seymour v. City of Tacoma*, 6 Wash. 138, 149, 32 P. 1077 (1893)). "'[A] title which is misleading and false is not constitutionally framed.'" *Id.* at 661 (alteration in original) (quoting *Howlett v. Cheetham*, 17 Wash. 626, 635, 50 P. 522 (1897)). "[O]bjections to the title must be grave . . . before we will hold an act unconstitutional." *N. Cedar Co. v. French*, 131 Wash. 394, 419, 230 P. 837 (1924) (citing *Lancey v. King County*, 15 Wash. 9, 45 P. 645 (1896)).

This court found a bill's title was unconstitutionally deceptive and misleading in *DeCano v. State*, 7 Wn.2d 613, 630-31, 110 P.2d 627 (1941). There, the measure was titled "'AN ACT relating to the rights and disabilities of aliens with respect to land.'" *Id.* at 623; LAWS OF 1937, ch. 220. Chapter 220 amended a previous act that had denied many civil rights to "aliens," including the right to own real property. LAWS OF 1937, ch. 220 (amending LAWS OF 1921, ch. 50). The 1921 act had exempted from its denial of civil rights anyone "who has in good faith declared his intention to become a citizen of the United States." LAWS OF 1921, ch. 50, § 1(a). The 1937 act significantly limited who could own property by also requiring the person to be a citizen or be eligible for citizenship. LAWS OF 1937, ch. 220, § 1(a). The Court found the 1937 act violated article II, section 19 because

> the title . . . is not sufficiently broad and comprehensive to warrant inclusion within the subject matter of the act of 'non-citizens . . . ineligible to citizenship by naturalization,' . . . [and,] by adopting a term defined in the earlier statute without giving any indication that its meaning has been changed and broadened by statutory definition, actually, although inadvertently no doubt, tends to be misleading and deceptive.

*DeCano*, 7 Wn.2d at 630-31. Relying in part on *DeCano*, we found that the ballot title for Initiative Measure 695 (I-695) was inadequate for failing to give notice of the measure's contents in *ATU*. *ATU*, 142 Wn.2d at 226. That ballot title said:

"'Shall voter approval be required for any tax increase, license tab fees be $30 per year for motor vehicles, and existing vehicle taxes be repealed.'" *Id.* at 193. The body of I-695 said that "'tax' includes, but is not necessarily limited to . . . impact fees, license fees, permit fees, and any monetary charge by [the] government."

LAWS OF 2000, ch. 1, § 2(2). The court concluded:

> I-695 violates the subject-in-title rule of article II, section 19 on the basis that the ballot title of I-695 states "[s]hall voter approval be required for any *tax* increase" without any indication in the title that "tax" has a meaning broader than its common meaning. Nothing about this ballot title gives any notice that would indicate to the voters that the contents of the initiative would include voter approval for charges other than taxes or suggest inquiry into the act be made to learn the broad meaning of "tax."

*ATU*, 142 Wn.2d at 227 (alteration in original) (footnote omitted). In contrast, we found no subject-in-title problem with the liquor privatization bill, Initiative 1183.

That title said that

> "Initiative Measure No. 1183 concerns liquor: beer, wine, and spirits (hard liquor).

24

"This measure would close state liquor stores and sell their assets; license private parties to sell and distribute spirits; set license fees based on sales; regulate licensees; and change regulation of wine distribution."

*WASAVP*, 174 Wn.2d at 647 (quoting *State of Washington Voters' Pamphlet, General Election* 19 (Nov. 8, 2011)). The challengers argued that the ballot title was inadequate and misleading because some of those fees were in fact taxes. We rejected that challenge because

[a] common understanding of the term "fee" is "a charge fixed by law or by an institution (as a university) for certain privileges or services <a license [fee]>. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 833 (2002). The license issuance fees under I–1183 correspond with this common meaning, as they are charges for the privilege of selling liquor in Washington State.

*Id.* at 664 (alterations in original). Thus, that ballot title was not deceptive or misleading. Here, the ballot statement for I-976 says:

Initiative Measure No. 976 concerns motor vehicle taxes and fees.

This measure would repeal, reduce, or remove authority to impose certain vehicle taxes and fees; *limit annual motor-vehicle-license fees to $30, except voter-approved charges*; and base vehicle taxes on Kelley Blue Book value.

CP at 1131 (emphasis added). The challengers argue that the initiative violates the subject-in-title rule because it misleadingly implies that local vehicle excise taxes and fees previously approved by voters will survive passage of the initiative, when in fact sections 6, 10, 11 and 13 would eliminate a large number of voter-approved charges and remove the very statutory mechanism by which voters could approve charges in the future. The State concedes that I-976 cancels voter-approved taxes

and removes the mechanisms for voters to approve them in the future. It contends, however, that the ballot title is not misleading because it says that certain taxes are repealed and because, under our constitution, the legislature or the people, via initiative, could reenact such authority in the future.

We read ballot titles as the average informed lay voter would. *WASAVP*, 174 Wn.2d at 662 (quoting *W. Petrol. Imps.*, 127 Wn.2d at 424). The average informed lay voter would not think that "[t]his measure would . . . limit annual motor-vehicle-license fees to $30, except voter-approved charges" would mean charges previously approved by voters would be eliminated. CP at 1131. As the League of Women Voters notes, many voters have voted on such measures in the past, and "the average-informed voter encountering the phrase 'except voter-approved charges' would expect that these earlier votes were the reason for the 'except' clause [and] would have no reason to anticipate that I-976 would implicitly repeal their votes while telling them that 'voter-approved charges' were 'except[ed].'" Amicus Curiae Br. of League of Women Voters of Wash. at 12 (second alteration in original). [3]

---

[3] The State does not dispute that under I-976, no person would pay less than $43.25 to renew their car tabs. At oral argument, the State suggested that voters might have well understood "$30.00 car tabs . . . is a political phrase, it's like promising a 'chicken in every pot.' It's not a promise." Wash. Supreme Court oral argument, *Garfield County Transp. Auth. v. State*, No. 98320-8 (June 30, 2020), at 42 min., 33 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (available at https://www.tvw.org/watch/?eventID=2020061188). While ballot titles may not be promises,

Similarly, the average informed lay voter would not think the initiative eliminates the statutory mechanism for voters to approve charges in the future. We are unpersuaded by the State's argument that this clause is not misleading because future legislation could create a new mechanism to permit voters to approve taxes. The ballot statement of an initiative concerns the effect of the initiative. It is not the place for truisms about legislative power. We hold that the initiative violates the subject-in-title rule because it is deceptive and misleading since the average informed lay voter would conclude voter approved taxes – such as those used to fund local and regional transportation projects across our state – would remain.

3. Remaining arguments

We do not reach the remaining constitutional arguments and dispose of the nonconstitutional arguments briefly. One of the intervenors contends that the trial judge should have recused himself since he works for, and stands for election in, King County. Nothing in the record suggests any party made a motion for the trial

---

they must be accurate. To the extent the State argues that $43.25 can be understood as $30.00, the argument is not well taken.

judge to recuse himself. Any error is unpreserved, and we decline to reach it. *See* RAP 2.5(a).

An intervenor also contends that county and municipal plaintiffs who have challenged I-976 have violated RCW 42.17A.555. That statute says in most relevant part:

> No elective official nor any employee of his or her office nor any person appointed to or employed by any public office or agency may use or authorize the use of any of the facilities of a public office or agency, directly or indirectly, for the purpose of assisting a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition.

RCW 42.17A.555.

A "'[b]allot proposition' means . . . any initiative . . . proposed to be submitted to the voters." RCW 42.17A.005(4). At the time of the court challenge, I-976 was no longer "proposed to be submitted to the voters." It was an enrolled piece of legislation. LAWS OF 2020, ch. 1. Finally, we decline to consider whether I-976 unlawfully interferes with bonds issued by the city of Burien as it was not designed for our review.

CONCLUSION

We hold that that I-976 violates article II, section 19 because it contains multiple subjects and an inaccurate ballot title. Accordingly, we reverse in part and remand to the trial court for further proceedings consistent with this opinion.

González, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Montoya-Lewis, J

Owens, J

Whitener J.

*Garfield County Transp. Auth. et al. v. State et al.*

No. 98320-8

MADSEN, J. (concurring)—I agree with the majority that Initiative 976 (I-976) violates the single subject rule of our state constitution. Majority at 15; WASH. CONST. art. II, § 19. The initiative's requirement to retire early, defease, or refinance existing bonds is not rationally related to I-976's subject of limiting vehicle taxes and fees. *See* majority at 15. I also agree that *Pierce County* I and II instruct and resolve this case.[1] *Id.* at 15-19.

The majority further holds that I-976 violates the subject-in-title rule because the title is unconstitutionally misleading. *Id.* at 21, 26; WASH. CONST. art. II, § 19. I disagree because the ballot title alerts voters that local revenue options would be affected and prompt further inquiry into the body of the act. Thus, in my view, I-976 does not violate the subject-in-title requirement of article II, section 19.

1. Single Subject Rule

The majority correctly applies our decisions in *Pierce County* I and II. *Pierce County* I concerned Initiative 776 (I-776), which limited license tab fees and called for

---

[1] *Pierce County v. State*, 150 Wn.2d 422, 78 P.3d 640 (2003) (*Pierce County* I); *Pierce County v. State*, 159 Wn.2d 16, 148 P.3d 1002 (2006) (*Pierce County* II).

but *did not require* the early retirement, refinance, and defeasement of existing bonds. *See*, *e.g.*, 150 Wn.2d at 432-33 (citing section 7 of I-776 entitled, "Legislative Intent Relating to Outstanding Bonds"). We upheld the initiative against a single subject challenge, holding that these nonenforceable statements of policy are not separate subjects and do not violate the single subject rule. *Id*. at 433 (citing WASH. CONST. art. II, § 19).

*Pierce County* II dealt with contract impairment. There, we held that I-776 unconstitutionally impaired contracts with bondholders because it repealed taxes pledged to repay existing bonds. *Pierce County* II, 159 Wn.2d at 31-32. We went on to address the additional claim that if I-776 impaired bondholder contracts, this court should revive and make legally binding the sections requiring early retirement of bonds. *Id*. at 46-48. Relevant to the present case is our reasoning for rejecting this argument. We noted that giving force to nonbinding policy statements to retire bonds would violate both the contracts clause and, importantly, article II, section 19. *Id*. at 48.

*Pierce County* II rejected the invitation to create in I-776 the exact situation we are faced with here. I-976's operative sections require the early retirement of existing bonds. As *Pierce County* II noted, such sections would constitute an additional subject because bond financing is not germane to limiting vehicle fees and taxes—the subject of I-976.

*See* majority at 18. For that reason, I agree that *Pierce County* II resolves the current case.[2]

## 2. Subject-in-Title Rule

The majority concludes I-976's ballot title is misleading and therefore unconstitutional under the subject-in-title rule. Majority at 26; WASH. CONST. art. II, § 19. I disagree.

Article II, section 19 is to be liberally construed in favor of the legislation. *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 206, 11 P.3d 762 (2000). A title is misleading if it is not constitutionally framed. *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 661, 278 P.3d 632 (2012) (quoting *Howlett v. Cheetham*, 17 Wash. 626, 635, 50 P. 522 (1897)). A title is constitutional "if it gives notice which would lead to an inquiry into the body of the act or indicates the scope and purpose of the law to an inquiring mind." *Amalg. Transit*, 142 Wn.2d at 217.

I-976's ballot title states that it would repeal or completely remove "authority to impose certain vehicle taxes and fees; limit . . . fees to $30, except voter-approved charges." Clerk's Papers (CP) at 1131. We interpret the plain language of initiatives in the same way as laws passed by the legislature, which includes grammatical rules. *State*

---

[2] The majority quotes extensively from the dissenting opinion in *Pierce County* I, which would have held that legislation containing a mandatory subject and an unrelated, nonmandatory one violates article II, section 19. 150 Wn.2d at 444 (Chambers, J., dissenting). We noted these concerns in *Pierce County* II, 159 Wn.2d at 48. Here, the majority's reliance on *Pierce County* I's dissent is instructive for the unique issue before us, yet it is important to note that the majority in *Pierce County* I remains good law as to the issues it addressed.

3

*v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) ("[W]e employ traditional rules of grammar in discerning the plain language of the statute."). The ballot title divides its actions with semicolons, and the phrase "except voter-approved charges" is in the sentence fragment related to $30 car tabs and separate from the terms on repealing authority to impose vehicle taxes. Section 2 of I-976 amends chapter 46.17 RCW to provide that motor vehicle license fees are limited to $30, except voter-approved charges; and the section defines "'motor vehicle license fees'" to mean "'general license tab fees paid annually for licensing motor vehicles,'" which do not include "'charges approved by voters after the effective date of this section.'" Corrected Br. of Resp't/Cross-Appellant State of Wash. at 33 (quoting LAWS of 2020, ch. 1, § 2). I-976 told voters it would remove authority to impose taxes and separated that statement from voter-approved charges.

The construction of this ballot title *may* have generated some confusion as to whether the initiative would remove or reduce authority concerning voter-approved charges. The subject-in-title rule, however, does not require absolute clarity. Ballot titles need not be "'an index to its contents; nor is the title expected to give the details contained in the bill.'" *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 555, 901 P.2d 1028 (1995) (quoting *Treffry v. Taylor*, 67 Wn.2d 487, 491, 408 P.2d 269 (1965)). A title complies with the constitution if it provides notice leading to inquiry into the body of the act. *Amalg. Transit*, 142 Wn.2d at 217.

Critically, I-976's ballot title alerted voters that the measure would affect the authority to impose vehicle taxes and fees, and limit annual vehicle fees to $30, except voter-approved charges. CP at 1131. Although a voter may be unsure as to the meaning of the words—whether local add-on fees remain or are repealed—these words indicate the scope of the initiative would impact local revenue options, prompting a voter to look to the body of the act for further inquiry. *Amalg. Transit*, 142 Wn.2d at 217.

The right to initiative and referendum are guaranteed by our constitution. WASH. CONST. art. II, § 1(a), (b) (reserving to the people the authority to enact laws through initiatives and referenda). This court cannot interpret the initiative in such a manner that it deprives the people of acting in their legislative capacity. *See id.*; *Amalg. Transit*, 142 Wn.2d at 225 ("[L]egislation should be construed to preserve its constitutionality where possible.").

The majority likens I-976's ballot title to those found defective in *Decano v. State*, 7 Wn.2d 613, 630-31, 110 P.2d 627 (1941), and *Amalgamated Transit*, 142 Wn.2d at 226. Majority at 22-24. But both of these cases are distinguishable.

*DeCano* concerned a measure "'relating to the rights and disabilities of aliens with respect to land.'" 7 Wn.2d at 623. The bill amended an act that denied civil rights to aliens, including the right to own real property, but exempted anyone who "in good faith declared" an intention to become a United States citizen. *Id.* at 623-24. The measure at issue included a clause redefining "alien" to include all persons who are noncitizens of the United States and who are ineligible for citizenship by naturalization. This court

found the measure unconstitutional: "the title of the 1937 statute states that it pertains to the rights of 'aliens' with respect to land, but it gives no intimation whatsoever that the body of the act contains an amended definition of the word 'alien' which brings within its purview a whole new class of persons who are not in fact aliens in common understanding, by judicial construction, or under the express definition contained in the prior law." *Id*. at 624. The bill title was deceptive in that it gave no indication that the measure broadened the term "alien." *Id*. at 630-31.

*Amalgamated Transit* reviewed Initiative-695. 142 Wn.2d at 193. The ballot title at issue stated "'[s]hall voter approval be required for any tax increase'" without any indication in the title that tax has a meaning broader than its common meaning. *Id*. "Nothing about this ballot title gives any notice that would indicate to the voters that the contents of the initiative would include voter approval for charges other than taxes or suggest inquiry into the act be made to learn the broad meaning of 'tax.'" *Id*. at 227.

*DeCano* and *Amalgamated Transit* concern ballot titles using terms that are broadened without notice in the body of the act. The term "alien" in *DeCano* gave the voter no indication the measure used a different definition; similarly, in *Amalgamated Transit*, the term "taxes" was broadened. In this case, however, I-976's title did not contain a term that was then broadened in the body of the initiative without notice. Rather, as discussed above, the title indicated that I-976 would impact local revenue options. I would hold I-976's ballot title, unlike those in *DeCano* and *Amalgamated Transit*, is not unconstitutionally misleading.

6

Though I disagree with the majority that I-976 violates the subject-in-title rule, I agree that the measure contains an impermissible separate subject and is unconstitutional for that reason. Accordingly, I concur.

_____madsen, J._____